UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 04-CR-10288-NG |
| ) | |
| JOSEPH ALLEN ) | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Now comes the United States of America, by and through the undersigned counsel, and submits herewith its Opposition to Defendant's Motion to Dismiss the Complaint. The defendant, Joseph Allen, has moved to dismiss the complaint on the ground that he was not indicted within thirty days of his arrest in violation of the Speedy Trial Act. See 18 U.S.C. §3161.[1] The defendant's motion should be denied without an evidentiary hearing because the defendant was indicted on September 22, 2004 and thus his motion is moot.

Assuming *arguendo* that the defendant's Motion to Dismiss the Complaint is not moot, the defendant's motion should be denied because there has been no violation of the Speedy Trial Act. As set forth more fully below, although more than thirty days elapsed from the time of the defendant's arrest until his indictment, all but fourteen days of that period was excluded from the provisions of the Speedy Trial Act by excusable delay. See 18 U.S.C. 3161 §§(h)(1)(F), (h)(1)(J) and (h)(7).

---

[1] The defendant does not allege any violation of his Constitutional Sixth Amendment right to a speedy trial.

If this Honorable Court concludes that there has been a violation of the Speedy Trial Act, the only appropriate sanction is to dismiss the case without prejudice. Dismissal without prejudice is the only justifiable result because of the seriousness of the offense, the facts and circumstances which led to the dismissal, and the complete absence of any adverse impact on the administration of justice in general by the filing of a new indictment against the defendant. See 18 U.S.C. 3162 §(a)(1); and United States v. Brown, 770 F.2d 241 (1st Cir. 1985).

## Statement of Facts

The defendant and his twelve co-defendants are charged with conspiracy to possess with intent to distribute, and distribute, oxycodone in violation of 21 U.S.C. §846. The defendant also is charged in Count Sixteen of the indictment with the distribution of oxycodone on or about June 7, 2004, in violation of 21 U.S.C. §841. The indictment alleges that the defendant is accountable for a quantity of oxycodone that, when converted to marijuana as provided by USSG §2D1.1, is equivalent to at least 3,000 kilograms but less than 10,000 kilograms of marijuana. The government contends that the defendant is responsible for approximately 10,000 80 milligram OxyContin tablets. OxyContin is a brand name for a prescription medication containing oxycodone, a Schedule II controlled substance.

## I. The Speedy Trial Act Has not Been Violated

Section 3161(b), Title 18, United Sates Code, provides in pertinent part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."[2]  The statute does not require rigid adherence to the thirty day period, but rather mandates the exclusion of time under a variety of circumstances.  In enacting the Speedy Trial Act, Congress "recognized that the time limit requirements of the Act must be flexible enough to accommodate the practicalities of our adversary system."  <u>United States v. Mitchell</u>, 723 F.2d 1040 (1st Cir. 1983).

Section 3161(h) provides in pertinent part: "The following periods of delay shall be excluded in computing the time within an information or indictment must be filed, or in computing the time within which the trial of any offense must commence: ..." Section 3161 specifies more than fifteen circumstances under which time must be excluded in determining the thirty day period from arrest to indictment or the seventy day period from indictment to trial.  The following periods of delay must be excluded from the computation of the thirty and seventy day

---

[2] 18 U.S.C. §3161(c)(1) requires that the trial of a defendant commence within seventy days from the filing date (and making public) of the information or indictment.

3

clocks: "delay from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" [18 U.S.C. §3161 (h)(1)(F)]; "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" [18 U.S.C. §3161 (h)(1)(J)]; "A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" [18 U.S.C. §3161 (h)(7)].

The Section (h)(1)(F) exclusion [for pretrial motions] is automatic; a showing of actual delay is not required.  See United States v. Rush, 738 F.2d 497 (1st. Cir. 1984).  The First Circuit has noted that:

> "[t]he (h)(1)(F) exclusion applies not only to the particular defendants who file or join in pretrial motions, but also to codefendants whose trials have not been severed and whose speedy trial time has not otherwise run out.  Section (h)(7) provides an exclusion for '[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the trial has not run and no motion for severance has been granted.' Every circuit court that has considered this provision has held in essence that 'an exclusion applicable to one defendant applies to all codefendants.'" (Citations omitted).

United States v. Rush, 738 F.2d at 503.  The First Circuit has unequivocally held that (h)(7) "stops the [speedy trial] clock for one defendant in the same manner and for the same amount of time as for all co-defendants."  United States v. Rush, 738 at

4

504, quoting with approval United States v. Campbell, 706 F.2d 1138, 1141 (7th Cir. 1984)[3].

Section 3161 also excludes from speedy trial computations any delay resulting from "other proceedings concerning the defendant." See 18 U.S.C.§ 3161 (h)(1)[4]. The date of arrest is not counted when calculating the thirty day period between arrest and indictment. See Federal Rule of Criminal Procedure 45(a) and United States v. Mitchell, 723 F.2d at 1042. (1st Cir. 1983).

The defendant and several of his co-defendants were arrested on June 29, 2004. The day of arrest is excluded from speedy trial calculations. See Mitchell. The defendant made his initial appearance before the Court the next day, on June 30, 2004. This day is excluded pursuant to 18 U.S.C. §§ 3161 (A) and (B). At the defendant's initial appearance, the government made an oral motion to detain the defendant prior to trial. The Court

---

[3] The First Circuit noted that it was joining the Second, Third, Seventh, Eighth, Eleventh, and District of Columbia Circuits in holding that a delay for one defendant was a delay attributable to all co-defendants. United States v. Rush, 738 F.2d at 504.

[4] 18 U.S.C. §§3161 (1)(A) and (1)(B) each specify that delay resulting from any proceeding concerning the defendant shall be exempted from the speedy trial clock. Although (A) and (B) discuss delay occasioned by necessary physical and mental examinations of the defendant and the examination of the defendant pursuant to Section 2902 of Title 28 United States Code, the clear meaning of both paragraphs indicates that any proceeding involving the defendant is sufficient to stop the speedy trial clock. A pre-trail hearing, with or without the presence of the defendant, is sufficient to stop the speedy trial clock for each day of the hearing or proceeding.

conducted a hearing on the government's oral detention motion on July 2, 2004 and at the conclusion of the hearing took the matter under advisement. On July 12, 2004, the Court entered its Memorandum of Probable Cause and ORDER OF DETENTION with regard to the government's oral motion for the pre-trial detention of the defendant. The period from June 30, 2004 to and including July 12, 2004 is excluded from speedy trial computations pursuant to 18 U.S.C. §§3161(h)(1)(F) and (h)(1)(J).

On July 12, 2004, the Court conducted a hearing on the government's motion to detain co-defendants Espinola, Baldassano, Cream, and Matthews. At the conclusion of the hearing, the Court took the detention matter under advisement. On July 16, 2004, the Court entered its Memorandum of Probable Cause and ORDER OF DETENTION as to those defendants. At that time, the Court also scheduled a further hearing on the conditions of release for defendant Cream. That hearing was conducted on July 23, 2004 and the Court entered its ORDER Setting Conditions of Release as to Matthew Cream the same day. The period of time from July 12, 2004 to and including July 23, 2004 is excluded from speedy trial computations pursuant to 18 U.S.C. §§3161(h)(1)(F) and (h)(1)(J). This excluded period applies to the defendant pursuant to 18 U.S.C. §3161 (h)(7). See United States v. Rush, 738 F.2d at 504 (time exclusion for motions for one defendant applies to all co-defendants).

On July 16, 2004, co-defendant Albert filed a Motion to

6

Amend Conditions of Pre-Trial Release with the Court. On July 19, 2004, the Court granted Albert's motion. The period from July 16, 2004 to and including July 19, 2004 is excluded from speedy trial computations pursuant to 18 U.S.C. §3161(h)(1)(F), and applies to the defendant pursuant to 18 U.S.C. §3161(h)(7).

On July 20, 2004, the defendant filed a SEALED MOTION with the Court. The docket does not appear to reflect any action having been taken on defendant's sealed motion. If the Court took action on the motion the day it was filed (July 20, 2004), the speedy trial clock started to run the next day, July 21, 2004. If the Court has not taken action on the defendant's SEALED MOTION, and the motion requires a hearing, the speedy trial clock has not yet started to run. 18 U.S.C. §h)(1)(F) exempts from speedy trial computations the period from the filing of the motion until disposition of the motion.

Assuming *arguendo* that the Court disposed of the defendant's July 20, 2004 SEALED MOTION immediately, the earliest date on which the speedy trial clock could begin to run was July 24, 2004, the day after the Court concluded the detention motion hearing on co-defendant Cream. The speedy trial clock ran for a four day period between July 24, 2004 and July 27, 2004. During these four days there does not appear to have been any pending motions or court hearings which would have further delayed the commencement of the speedy trial clock.

On July 28, 2004, the defendant filed a Motion to Revoke

Detention Order as to Joseph Allen. On July 30, 2004, a motion hearing was scheduled before District Court Judge Zobel for August 9, 2004. On August 9, 2004, a hearing on the defendant's motion was heard by Judge Zobel, who, on the same day, allowed the defendant's motion and ordered his release. The period from July 28, 2004, the date the defendant filed his motion, through August 9, 2004, the date the motion was resolved by the Court, is excluded from speedy trial computations pursuant to 18 U.S.C. § 3161(h)(1)(F).

The speedy trial clock started up again on August 10, 2004 at day five, but ran only to the next day. On August 12, 2004, co-defendant Torrente filed a motion with the Court. The filing of Torrente's motion stopped the speedy trial clock. Torrente's motion was allowed by the Court on August 30, 2004. The period from August 12, 2004 through August 30, 2004 is excluded speedy trial computations pursuant to 18 U.S.C. §3165(h)(1)(F), and applies to the defendant pursuant to 18 U.S.C. §3161 (h)(7).

The speedy trial clock resumed running on August 31, 2004 at day seven, and ran until the government filed a sealed motion with the Court on September 8, 2004. The government's sealed motion is still pending and the Court has scheduled a hearing on the motion for October 4, 2004. The period of time from the filing of the government's motion on September 8, 2004 through, at least, October 4, 2004, the date of the hearing, is excluded from speedy trial computations pursuant to Section 3161(h)(1)(F),

8

and made applicable to the defendant pursuant to Section 3161(h)(7).

On September 15, 2004, the defendant filed the instant motion with the Court.  The filing of the instant motion also stops the speedy trial clock pursuant to Section 3165(h)(1)(F).

The defendant and his twelve co-defendants were indicted on September 22, 2004.  Fourteen days have run on the thirty day speedy trial clock, July 24 through July 27 [4 days], August 10 through August 11 [2 days], and August 31 through September 7 [8 days].  There has been no speedy trial violation and the defendant's Motion to Dismiss the Complaint should be denied.

Despite the unambiguous language of the statute, the defendant argues in his brief that Section 3161(h)(7) does not apply to the computation of the thirty day period between arrest and indictment.  In essence, the defendant argues that prior to indictment, excludable delay for one defendant is not excludable delay for another.  In support of his argument, the defendant cites a single twenty-one year old decision from another circuit that has never been adopted for this proposition by any other circuit.[5]

The only reasonable reading of Section 3161(h) is that the periods of excludable delay specified in the statute apply to both the computation of the thirty day period between arrest and

---

[5] See United states v. Garrett, 720 F.26 705 (D.C. Cir. 1983)

9

indictment and the seventy day period between indictment and trial.  Section 3161(h) states: "The following periods of delay shall be excluded in computing the time within which *an* information or indictment must be filed, or in computing the time within which the trial of any such offense must commence:".  The nine subparagraphs that follow (h), designated (1) through (9), list the numerous categories of excusable delay.  None of the nine subparagraphs make any distinction between the thirty day or seventy day speedy trial clocks.[6]  It is clear from the language of (h) that the periods of excusable delay apply to the period "within which an information must be filed or in computing the time within which a trial of any such offense must commence."

The defendant concedes in his memorandum that other excludable periods specified in Section 3161(h) apply to the pre-indictment speedy trial clock.  He acknowledges that the period from July 2, 2004, the date of the defendant's probable cause/detention hearing, until July 12, 2004, the date the Court released its Order, is excluded from speedy trial calculations pursuant to Section 3161(h)(1)(J).  The defendant does not even attempt to reconcile the clear language of Section 3161(h), which

---

[6]Section (h)(7) allows for a "reasonable period of delay when the defendant is joined for trial with a codefendant."  Given the clear intent of Congress that whenever practicable co-defendants should be tried together, and the unambiguous language of Section (c), the government contends that this Section applies whenever defendants are joined in the same complaint or indictment.  See Patridge, Legislative History of Title I of the Speedy trial Act of 1974, 134 (1980).

explains that the time exclusions in the statute apply to both the thirty and seventy day clocks, with his argument. If the legislature intended Section 3161(h)(7) to be limited only to the post-indictment seventy day speedy trial clock, it would have explicitly stated its intent. If the legislature intended Section 3161(h)(7) to apply only to the post-indictment speedy trial clock, it would not have placed the provision in the midst of Section (h) which applies to both the thirty day pre-indictment period and the seventy day post-indictment period.

## II. If the Speedy Trial Act Has been Violated, the Case Should Be Dismissed Without Prejudice

If this Honorable Court concludes that the Speedy Trial Act has been violated, the government respectfully submits that the appropriate remedy is dismissal of the indictment without prejudice.[7] 18 U.S.C. §3162(a)(2), which discusses dismissal when the Court has found a Speedy Trial Act violation, provides in relevant part:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among

---

[7]As discussed earlier, the government contends that the defendant's Motion to Dismiss the Complaint is moot. The indictment in this case essentially superceded the complaint and rendered an inquiry into the continued validity of the complaint unnecessary and untimely. The government has seventy days from the date of indictment to bring the defendant to trial. See 18 U.S.C. 3161(C)(2). The government is not in violation of the seventy day speedy trial clock. If, however, this Honorable Court concludes that the defendant's pre-indictment speedy trial rights have been violated and that he is entitled to a dismissal of the indictment, the government contends that dismissal without prejudice is the appropriate remedy.

others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

In addition to the three factors specifically noted in Section 3162(a)(2), the statute permits the Court to consider additional, although unspecified, factors in determining whether dismissal will be with or without prejudice. "[A] district court may factor into the [Speedy Trial] Act's calculus, for example, items such as the length of delay and the prejudice to the defendant stemming from the violation (or conversely, the absence of prejudice)." United States v. Hastings, 847, F.2d 920, 924 (1st Cir. 1988).

The determination of whether dismissal shall be with or without prejudice is left to the sound discretion of the trial judge. United States v. Pringle, 751 F.2d 419, 436 (1st Cir. 1984). There is no presumption that a dismissal for a violation of the Speedy Trial Act is to be with prejudice. United States v. Brown, 770 F.2d. 241 (1st Cir. 1985).

Dismissals with prejudice must be justified on the record. United States v. Taylor, 487 U.S. 326 (1988). Indictments should be dismissed with prejudice only in cases of flagrant government misconduct. Dismissals with prejudice, unless adequately justified, interfere with the government's inherent authority to make charging decisions. United States v. Simpson, 927 F.2d 1088 (9th cir. 1991); United States v. Goodson, 204 F.3d 508 (4th Cir.

2000). "[W]hen the charged crimes are serious, only an equally serious delay can justify dismissal with prejudice." United States v. Hastings, 847 F.2d 920, 929 (1st. Cir. 1988).

The government contends that if this Honorable Court concludes that dismissal is appropriate in this case, the indictment should be dismissed without prejudice.  A review of the factors listed in 18 U.S.C. §3163(a)(2), the additional factors referenced by court decisions, and the circumstances of this case lead to only one reasonable conclusion: that the facts of this case are serious, the facts and circumstances that led to the violation are not egregious and do not show bad faith on the part of the government, and that the reprosecution of the defendant will have no adverse effect of the administration of justice.  Moreover, the length of delay was no more than five days and there has been no appreciable prejudice to the defendant.

Seriousness of the Offense

The defendant is one of thirteen co-defendants named in a seventeen count indictment.  The defendant is named in Counts one and Sixteen of the indictment.  He is alleged to have participated in a multi-layered OxyContin distribution conspiracy operating in and around Gloucester, Massachusetts.  The defendant is charged with being responsible for 10,000 OxyContin tablets.[8]

---

[8]The indictment (a copy of which is attached at Exhibit A) specifies the marijuana equivalent to OxyContin pursuant to USSG

13

The defendant also is named in Count Sixteen, which alleges he participated in a controlled sale of Oxycodone on June 7, 2004, to a police officer, who was working in an undercover capacity.

As the First Circuit noted in <u>United States v. Brown</u>, 770 F.2d 241 at 244 "[t]he distribution of a substantial amount of a hard drug like cocaine is a serious and grave offense against the society as a whole, and the district court properly found that the offense weighed heavily in favor of dismissal without prejudice." In <u>Brown</u>, the case involved "four ounces, with a wholesale value of approximately $10,000." <u>United States v. Brown</u>, 770 F.2d at 244. The defendant now before this Honorable Court is charged with being responsible for approximately 10,000 OxyContin tablets with a street value of approximately $800,000. The government need not remind this knowledgeably Court of the grave dangers posed to individuals and society by the illegal trafficking of OxyContin. This case is critically important to stemming the flow of illegal OxyContin into the North Shore of Massachusetts.

The evidence presented against the defendant at the grand jury was substantial. Several witnesses testified that they had purchased OxyContin from the defendant during the pendency of the investigation.[9]

---

§2D1.1.

[9]If this Court so desires, the government will make the pertinent grand jury transcripts detailing the defendant's

Facts and Circumstances that Led to the Dismissal

The government contends that there were at least sixteen days remaining on the pre-indictment thirty day speedy trial clock at the time the defendant was indicted. If this Court concludes that Section (h)(7) does not apply to the pre-indictment thirty day speedy trial clock, the defendant was indicted on day 35 of the pre-indictment speedy trial clock.

The defendant was arrested on June 29, 2004. At his initial appearance the next day, the government made an oral motion to detain the defendant. The defendant's detention hearing was held on July 2, 2004 and the Court entered its Order of Detention on July 12, 2004. As a result, the pre-indictment speedy trial clock did not begin to run until July 13, 2004. The clock ran for seven days and was stopped on July 20, 2004, by the defendant's filing of a sealed motion. The docket does not indicate that the Court ever took any action on the defendant's sealed motion or that the defendant ever filed a further motion requesting that action be taken by the Court. If the sealed motion required a hearing and one was not conducted, the speedy trial clock has never restarted. See 18 U.S.C. 3161 §(h)(F). If the sealed motion did not require a hearing, but remained under consideration by the Court, the speedy trial clock did not resume for thirty days. See 18 U.S.C. 3161 §(h)(J).

---

criminal conduct available to the Court for an in camera review.

Assuming *arguendo* that the Court took action on the defendant's sealed motion on the day it was filed, the speedy trial clock resumed running on July 21, 2004, at day eight. The clock then ran until July 27, 2004 (day fourteen). It stopped on July 28, 2004, because the defendant filed a Motion to Revoke Detention. On August 9, 2004, the Court (Zobel, J.) held a hearing on the defendant's Motion and allowed his release on the same day. As a result, the speedy trial clock resumed running on August 10, 2004 (day fifteen). The clock stopped again on September 14, 2004 (day thirty-five) because the defendant filed a Motion to Dismiss the Complaint on September 15, 2004. The clock has yet to resume running. The defendant was indicted on September 22, 2004.

The government believed, as it still does, that the defendant's speedy trial rights were never violated. On a number of occasions prior to indictment the undersigned examined the speedy trial issue and reviewed the various delays present in this case. The government believed, and still believes, that "an exclusion applicable to one defendant applies to all co-defendants." United States v. Rush, 738 F.2d 497 at 503.

The grand jury began taking evidence on this case on July 14, 2004 and concluded taking evidence on September 22, 2004, the day the grand jury voted the indictment. The grand jury took testimony from twelve witnesses on a total of six different dates. The government continued to investigate this case until

16

the day the case was indicted. It should also be noted that additional grand jury witnesses were discovered by the agents working on this case throughout the time between the filing of the complaint and shortly before the date of indictment. The government was mindful of its obligations under the Speedy Trial Act and acted in reliance on its interpretation of the clear meaning of Section 3161(c). In the absence of any First Circuit law questioning the applicability of Section 3161((8)c), the government contends its actions were reasonable. See United States v. Brown, 770 F.2d at 244, where the First Circuit distinguished between intentional violations of the Speedy Trial Act and situations where the violation was the result of a misinterpretation of a section of the Act, which had "never previously been construed by this Circuit."

   The dismissal of the indictment without prejudice will have no adverse impact on the administration of justice. Dismissal of the indictment with prejudice is unwarranted. The charges against the defendant are serious, the government's actions have been reasonable, particularly in light of the language of Section 3161 (c), and as discussed above, the delay was no more than five days, and there was no appreciable prejudice to the defendant. In United States v. Hastings, 847 F.2d at 929, the First Circuit was similarly confronted with a speedy trial violation of five days. In Hastings, the First Circuit noted that "so brief a delay [five days] is unlikely to ... materially hamper a

defendant." The First Circuit also noted that where "[t]he time limit was exceeded by five days... [o]ther concerns would have to militate very strongly against reprosecution before such a brief holdup could justify dousing serious charges forever." Hastings 847 F2.d at 929.

In United States v. Brown, 770 F.2d 241 (1st. Cir 1985), the First Circuit upheld a District Court's dismissal without prejudice for a violation of the Speedy Trial Act noting, "[t]length of time by which the Act's limit was exceeded (i.e., 35 days) was not exorbitant. Appellant presented no evidence that he suffered any actual prejudice by dismissal without prejudice. [citations omitted] The crimes charged were serious and the proper administration of justice calls for their prosecution." United States v. Brown, 770 F.2d at 245.

Impact of Reprosecution on the Administration of Justice

There will be no adverse impact on the administration of justice if the government is permitted to present this case to the grand jury a second time for re-indictment. The government acted in good faith with regard to the requirements of the Speedy Trial Act, the case law on Section (h)(1)(J) is, at best, unclear, the charges are extremely serious, and the delay in this case (5 days) is small.

Additional Factors to be Considered

As described above, the length of the delay and the lack of any prejudice to the defendant are important considerations for

the Court when deciding if dismissal should be with or without prejudice.  The delay in this case is five days.  This is a minimal delay and the defendant has suffered no prejudice as a result of such an insignificant delay.  The interests of justice are best served by permitting the government to prosecute the defendant for the serious charges he now faces.

## CONCLUSION

For the reasons discussed above, the government respectfully requests that this Honorable Court deny the defendant's Motion to Dismiss the Complaint.

                                      Respectfully submitted,

                                      MICHAEL J. SULLIVAN
                                      United States Attorney

                         By:  */s/ David G. Tobin*
                              DAVID G. TOBIN
                              Assistant U.S. Attorney

Date:  October 8, 2004