UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

UNITED STATES

v.

CARLOS ESPINOLA, et al.

## JOINT MOTION OF DEFENDANTS JOSEPH ALLEN, PHILIP ALBERT, JR., CARLOS ESPINOLA, JAMES GARDNER, AND JARED KNOWLTON FOR DISCOVERY

Joseph Allen, Philip Albert, Jr., Carlos Espinola, James Gardner, and Jared Knowlton

(hereinafter "the defendants"), defendants in the above-captioned criminal case, hereby move this

Court, pursuant to Fed. R. Crim. P. 7(f) and 16 and Rule 116.3(G) of the Local Rules for the District

of Massachusetts, for an order requiring the government to provide the discovery specified below.

1.    **Bill of Particulars (Fed. R. Crim. P. 7(f))**

Defendants' Request:

A.    *The date each defendant is alleged to have joined the conspiracy charged in Count One of the Indictment;*

B.    *A description of the action(s) by which each defendant is alleged to have joined the conspiracy charged in Count One of the Indictment;*

C.    *The date(s) and location(s) of any overt act(s) allegedly committed by each of the defendants in furtherance of the conspiracy charged in Count One of the Indictment;*

D.    *A description of any overt act(s) allegedly committed by each of the defendants in furtherance of the conspiracy charged in Count One of*

the Indictment;

E.    A description of the act(s) committed by Mr. Allen on June 7, 2004 that constitute a violation of 21 U.S.C. §841(a)(1) or 18 U.S.C. §2, as alleged in Count Sixteen of the Indictment; and

F.    The names of all witnesses to Mr. Allen's alleged criminal conduct in violation of 21 U.S.C. §841(a)(1) or 18 U.S.C. §2, as alleged in Count Sixteen of the Indictment;

G.    A description of the acts committed by Mr. Albert on or about November 5, 2003 that constitute a violation of 21 U.S.C. §841(a)(1) or 18 U.S.C. §2 as alleged in Count Four of the Indictment;

H.    The names of all witnesses to Mr. Albert's alleged criminal conduct in violation of 21 U.S.C. §841(a)(1) or 18 U.S.C. §2 as alleged in Court Four of the Indictment;

I.    The names of all witnesses to each defendant's alleged criminal conduct in violation of 21 U.S.C. §841(a)(1) or 18 U.S.C. §846, as alleged in Count One of the Indictment;

J.    A description of the acts committed by Mr. Gardner on January 6, 2004 that constitute a violation of 21 U.S.C. §860(a) or 18 U.S.C. §2, as alleged in Count 8 of the Indictment;

K.    The names of all witnesses to Mr. Gardner's alleged criminal conduct in violation of 21 U.S.C. §860(a) or 18 U.S.C. §2, as alleged in Count 8 of the Indictment; and

L.    The times, places, manner, and means supporting the following allegations:

1. The defendant Jared Knowlton is accountable for a quantity of oxycodone that, when converted to marijuana as provided by USSG §2D1.1 (drug equivalency table), is equivalent to at least 3,000 kilograms of marijuana but less than 10,000 kilograms of marijuana.

2. The defendant Joseph Allen is accountable for a quantity of oxycodone that, when converted to marijuana as provided by USSG §2D1.1 (drug equivalency table), is equivalent to at least 3,000 kilograms of marijuana but less than 10,000 kilograms of marijuana.

3. The defendant James Gardner is accountable for a quantity of oxycodone

-2-

*that, when converted to marijuana as provided by USSG §2D1.1 (drug equivalency table), is equivalent to at least 3,000 kilograms of marijuana but less than 10,000 kilograms of marijuana.*

*4. The defendant Carlos Espinola is accountable for a quantity of oxycodone that, when converted to marijuana as provided by USSG §2D1.1 (drug equivalency table), is equivalent to at least 10,000 kilograms of marijuana but less than 30,000 kilograms of marijuana.*

*5. The defendant Philip Albert, Jr. is accountable for a quantity of oxycodone that, when converted to marijuana as provided by USSG §2D1.1 (drug equivalency table), is equivalent to at least 3,000 kilograms of marijuana but less than 10,000 kilograms of marijuana.*

*See* Indictment at 21-24.

Argument:

The defendants are five of thirteen defendants charged with participating in a conspiracy which allegedly spanned approximately eight months. In its written response to Mr. Allen's discovery letter, the government declined to provide a Bill of Particulars, contending that the discovery provided to Mr. Allen fully explains his criminal conduct.

Although the government has provided over three hundred pages of written reports and a lengthy affidavit by Special Agent Steven C. Story, the material concerning Mr. Allen is very limited. Discovery regarding Mr. Allen provided to date is, in substance, as follows:

1. On January 6, 2004, after co-defendant Keith Behsman sold narcotics to undercover agents in the apartment of the undercover agents, Behsman and co-defendant James Gardner drove to a 7-Eleven store in Gloucester, where they met briefly with Mr. Allen, Paul Spanks, and Alicia Parisi. Mr. Allen was seen to shake hands with Gardner. The two groups then parted.

2. Later that same evening, Mr. Allen and Spanks were seen meeting outside with Randy Gibbs. The report alleges that Mr. Allen and Gibbs engaged in "what appear[ed] to be a hand to hand

transaction."[1]

3. On February 4, 2004, an undercover agent allegedly placed a telephone call to co-defendant Joseph Torrente for the purpose of negotiating an oxycodone transaction. Torrente allegedly said that he could not give the agent a lower price because he had been 'ripped off' by Mr. Allen. There was no further discussion of Mr. Allen.

4. On June 7, 2004, an undercover agent and a cooperating informant arranged to meet with co-defendant Joseph Baldassano at Steve's Restaurant in Gloucester, Massachusetts. Baldassano was at the restaurant for twenty-five minutes before leaving. He allegedly told the cooperating informant that there were a lot of police in the area, and requested to be picked up at a different location. Subsequently, Mr. Allen entered into Steve's Restaurant, and called out, "Baldie." He then exited the restaurant and sat on a stone wall for approximately fifteen minutes, before engaging the driver of a car in conversation and writing something on a piece of paper.[2] Baldassano, the undercover agent, and the cooperating informant drove to Peabody, Massachusetts, where they engaged in a drug transaction with co-defendant Jose Melo. Baldassano was then picked up by a vehicle containing Mr. Allen, Jason Matthews, and a third person. This vehicle drove to the North Shore Mall in Peabody, and then later returned Baldassano and Mr. Allen to Steve's Restaurant.

5. On June 10, 2004, an undercover agent purchased oxycodone from co-defendants Joseph Baldassano and Jose Melo at the 99 Restaurant in Danvers, Massachusetts. Melo then took Baldassano to the North Shore Mall, where he was picked up by a car containing co-defendant Matthew Cream, Mr. Allen, and an

---

[1]Mr. Allen is not charged in Count Eight, the substantive count involving January 6, 2004. There is no discovery provided to date suggesting that Mr. Allen bought or sold oxycodone on that occasion or on any other occasion.

[2]Special Agent Steven C. Story, in his Affidavit submitted in support of the criminal complaint, stated: "In my opinion, Allen was engaged in counter-surveillance for Baldassano and had detected the presence of law enforcement in and around Steve's Restaurant." Affidavit of Steven C. Story at 42.

unidentified driver.[3]

6. On June 29, 2004, co-defendants Baldassano, Cream, Matthews, and Allen were in a vehicle together when they were stopped and arrested.

Contrary to the government's position, this limited information - which essentially alleges that the defendant was standing outside a restaurant in which a drug deal was supposed to take place on one occasion, that he was a passenger in a car which picked up a co-defendant following drug deals on two occasions, and that he spoke to someone at a 7-Eleven store on one occasion - is inadequate to "explain [the defendant's] criminal conduct."

Likewise, discovery regarding Mr. Espinola is very limited. Discovery regarding Mr. Espinola provided to date is, in substance, as follows:

1. On February 5, 2004, I (DEA Agent Steven Story) participated in an interview of (defendant) Jason Matthews who had been arrested and who had previously been provided with the Miranda warning. Matthews stated that he sold various quantities of OxyContin tablets to regular customers in Gloucester over a two-year period from December 2001 to November 2003. Matthews explained that he obtained his OxyContin supply from a member of the "Red Devils Motorcycle Club" named "Karlos" and described "Karlos" as 27 to 28 years old, tall and thin, short brown hair, wears glasses, has tattoos of "flames" on his forearms, and is of Portugese descent. Matthews provided the exact description and location of "Karlos's [sic] house" on "Endicott Street in Peabody..."

2. Matthews estimated that he had conducted over 50 OxyContin deals with "Karlos" and that his partner in his OxyContin distribution deals was "Joe Cream" who recently moved to Lowell..."[4]

---

[3]Mr. Allen is not charged in Count Seventeen, the substantive count dealing with June 10, 2004.

[4]See: Affidavit of Steven Story, Paragraphs 71 through 75 dated June 29, 2003. To date, defense counsel for Mr. Espinola has received no discovery, *nor indicia of evidence* [other than the information provided in Agent Story's Affidavit] that binds Mr. Espinola to this case: upon

-5-

3. ... Matthews stated that he and Cream would normally "split 500 packs" (packages of 500 80 mg OxyContin tablets) which they obtained from "Karlos" for distribution in Gloucester..."

4. Matthews said that he had personally obtained up to 300 OxyContin tablets at a time from "Karlos" on given deals...

Contrary to the government's position, this limited information - which essentially alleges that Mr. Espinola was the "kingpin" of this OxyContin distribution scheme - the government has produced nothing thus far which would buttress its position, and it is wholly inadequate to "explain [the defendant's] criminal conduct."

Mr. Gardner is accused of being a "look-out" for the undercover purchase which occurred on December 2, 2003. The government has represented to defense counsel that it is imputing the 100-pill transaction of OxyContin tablets to Mr. Gardner which occurred at Bugaboo Creek Restaurant in Peabody, Massachusetts. The reports provided indicated that Mr. Gardner was observed in a Saturn vehicle in the parking lot of Bugaboo Creek. There is no information concerning how long the vehicle was in the parking lot or if there was any communication between Mr. Gardner and what was transpiring inside the Bugaboo Creek Restaurant. Defendant's position is that he was not part of what was transpiring and that the suggestion by the prosecution that the 100-pill transaction should be imputed to the defendant is erroneous. There is no information or video or audiotapes or police reports to substantiate the allegation that Mr. Gardner was acting as a "look-out."

Mr. Gardner is charged in Count 8 with distribution of Oxycodone, Public Housing Violation

---

information and belief, and despite an 8 month investigation by over 50 agents, Mr. Espinola has not been videotaped, audiotaped or in any way involved in any OxyContin transaction or discussion with any party, and a thorough search of his home by law enforcement personnel produced no OxyContin.

and Aiding and Abetting. It is the only count of the 17-count Indictment in which Mr. Gardner is charged. In the discovery provided by the prosecution to date, there is no indication of how they arrived at the accounting of weight of Oxycodone to Mr. Gardner. There is a significant difference in sentencing between 3,000 kilograms of marijuana and 10,000 kilograms of marijuana. The defendants therefore request the basis for this accountability and the weights as listed in the indictment.

In the context of this multi-defendant case, spanning many transactions and many months, the defendants have no idea what actions of theirs are alleged to be part of the criminal conspiracy, nor when they are alleged to have entered into the conspiracy. The scope of the alleged conspiracy, including when the defendants entered into the conspiracy, will define the scope of their respective defenses, as the defendants will need to prepare to test the prosecution's case with respect to their alleged criminal conduct within that time period. In particular, Count One of the Indictment alleges that Mr. Allen, Mr. Espinola, Mr. Gardner, and their co-defendants conspired to distribute oxycodone and to possess oxycodone with intent to distribute it beginning "at least by in or about October 2003." As detailed above, Mr. Allen, Mr. Espinola, and Mr. Gardner have been given no information about any conduct by them prior to January, 2004. Further, the indictment alleges specific amounts of oxycodone for which the government seeks to have the defendants held individually accountable; the defendants cannot test this portion of the government's case without knowing the particular drug transactions and amounts for which each defendant is allegedly responsible.

In the absence of this information, the defendants cannot properly prepare their defenses. They therefore request that the government be ordered to provide the requested information via a bill

of particulars, as authorized by Rule 7(f).

**2.    Expert Witnesses**

<u>Defendants' Request:</u>

> *Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial, describing the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.*

<u>Argument:</u>

Pursuant to Fed. R. Crim. P. 16(a)(1)(G):

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.... The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

In a telephone conference with counsel for Mr. Allen, the government stated that it would produce the requested discovery twenty-one days prior to trial. However, in this case, the defendants need the requested information at least sixty days prior to trial so that they can, if necessary, locate their own experts, obtain funds from the court for those experts, prepare them to testify, file appropriate motions *in limine*, and prepare to challenge the government's experts at trial through cross-examination.

3.    **Prior Bad Acts**

<u>Defendants' Request:</u>

*A description of any prior bad acts allegedly committed by any of the defendants about which the government intends to introduce evidence at trial pursuant to Federal Rule of Evidence 404(b). The defendants also request the names and addresses of any witnesses to these alleged acts whom the government intends to call at trial.*

<u>Argument:</u>

In a telephone conference with counsel for Mr. Allen, the government stated that it would disclose this information twenty-one days prior to trial. Pursuant to Local Rule 117.1(A)(4)(b), the trial judge must order that a description of prior bad acts, intended to be offered pursuant to Rule 404(b), be given to the defendant **"no later than** twenty-one (21) days before the trial date" (emphasis added). The Local Rule merely establishes the absolute latest date by which such discovery must be provided. The judge clearly has the authority to order disclosure at an earlier date, "if the judge determines that there are factors in the particular case that make it in the interests of justice to do so." Local Rule 117.1(B).

An earlier disclosure date is in the interests of justice in this complex, multi-defendant case, where the defendants simply cannot be expected to prepare for trial in the small amount of time allowed under the Local Rule. The defendants will have to investigate the details of any alleged bad acts, locate and interview prospective witnesses, and potentially file motions *in limine* regarding this evidence. The defendants therefore request that the government be ordered to turn over the requested information at least sixty days prior to trial.

4.    **Exculpatory Evidence**

Defendants' Request:

>    *A. Any statement made by any co-defendant in this case during a proffer session with the government or during testimony before the Grand Jury that tends to exculpate any defendant; and*
>    *B. Any statement made by any other person during a proffer session with the government or during testimony before the Grand Jury that tends to exculpate any defendant.*

Argument:

In a telephone conference with counsel for Mr. Allen, the government indicated that it had complied with Local Rule 116.2(b)(1)(a)-(f), and would comply with Local Rule 116.2(b)(2)(a)-(g) no later than twenty-one days prior to trial. With respect to the material covered under Local Rule 116.2(b)(2), the defendants submit that twenty-one days is the minimum required under the Local Rules, and in the context of this case earlier discovery is warranted. The defendants should be provided with exculpatory material sufficiently in advance of trial to enable them to make adequate use of it in their trial preparations.

>    [T]he earlier the disclosure [of exculpatory material] the more effective the defense use of it will be.... Exculpatory information affects the defense investigation, how it will allocate its resources, the voir dire questions the defense will seek, the framing of opening statements, the nature of the pre-trial research on evidentiary issues and jury instructions, in short, all of the strategic decisions which must be made long in advance of trial.

United States v. Snell, 899 F.Supp. 17, 21 (D. Mass. 1995) (Gertner, J.). See also United States v. Josleyn, 99 F.3d 1182, 1196 (1st Cir. 1996) (defendant must be given opportunity to make effective use of material in preparing and presenting his case). The First Circuit has noted that Rule 16 is intended to contribute to the "fair and efficient administration of criminal justice ... by minimizing

the undesirable effect of surprise at trial, and by contributing to the accuracy of the fact finding

process." <u>United States v. Alvarez</u>, 987 F.2d 77, 85 (1993). The defendants therefore request that

such material be disclosed at least sixty days prior to trial.

5.      **Witness List**

   <u>Defendants' Request:</u>

   *The names, addresses, and birthdates of all witnesses the government intends*
   *to call during its case-in-chief at trial.*

   <u>Argument:</u>

   In a telephone conference with counsel for Mr. Allen, the government stated that it would

provide the names and address of witnesses intended to be called in its case-in-chief at least seven

days prior to trial. The issue, once again, is primarily one of timing. The government refuses to

disclose the information earlier than the latest possible date permitted under the Local Rules. In the

context of this case, it would be impossible for counsel for the defendants properly to investigate

and, if necessary, interview all the government's witnesses in the one week prior to trial, tasks

necessary to mount a constitutionally effective defense. Accordingly, the defendants request that the

information requested be provided at least sixty days prior to trial.

   The defendants do not challenge the government's stated intention not to provide the dates

of birth and home addresses of law enforcement witnesses. They do, however, request that if the

government intends to decline to provide the name, birthdate, and address of any non-law

enforcement witness, that it be required to follow the procedures set out by Local Rule 116.6(A).

That rule states in part:

-11-

> If in the judgment of a party it would be detrimental to the interests of justice to make any of the disclosures required by these Local Rules, such disclosures may be declined, before or at the time that disclosure is due, and the opposing party advised in writing, with a copy filed in the Clerk's Office, of the specific matters on which disclosure is declined and the reasons for declining. If the opposing party seeks to challenge the declination, that party shall file a motion to compel that states the reasons why disclosure is sought. Upon the filing of such motion, except to the extent otherwise provided by law, the burden shall be on the party declining disclosure to demonstrate, by affidavit and supporting memorandum citing legal authority, why such disclosure should not be made.

The government's conclusory recitation in its written response to Mr. Allen's discovery letter that information regarding the home addresses and dates of birth of some civilian witnesses "may constitute a threat to the safety of the witness" does not meet the Local Rule's requirement that the party state "the specific matters on which disclosure is declined" or the requirement that the party state "the reasons for declining." The defendants must be given sufficient notice of what and why the government is declining to disclose, so that they can, if appropriate, challenge that declination.[5]

6.    **Reports**

Defendants' Request:

> *All reports relevant to this case which were prepared by percipient law enforcement officers and not previously disclosed to the defendants.*

Argument:

The defendants request that the court order that the government produce the requested

---

[5]The possibility that the government may decline to provide such information is another reason for early discovery, as defendants may need to file motions challenging that discovery and the government may need to respond to such motions. Under the government's proposed time line, this procedure could not begin until seven days prior to trial. That is too late!

-12-

material sixty days prior to trial. Disclosure any closer to trial would interfere with the defendants' ability to effectively prepare their defenses.

The government, in its written response to Mr. Allen's discovery letter, indicated that it would provide all reports "prepared by percipient law enforcement officers that contain exculpatory evidence or constitutes Jencks Act materials." However, under Fed. R. Crim. P. 16(a)(1)(E), the defendant must be given access to all papers and documents that are "material to preparing the defense," not just those containing exculpatory evidence or constituting Jencks Act materials. Rule 16(a)(1)(E) is not merely a codification of the government's obligations under Brady v. Maryland, 373 US 83 (1963). Rather, Rule 16(a)(1)(E) authorizes discovery of documents that would enable the defendant "significantly to alter the quantum of proof in his favor." United States v. Buckley, 586 F.2d 498, 506 (5th Cir. 1978), quoted in United States v. Jordan, 316 F.3d 1215, 1250 (11th Cir. 2003). This includes materials likely to assist in preparation of the case, even if they are inculpatory. See United States v. Marshall, 132 F.3d 63, 67 (D.C. Cir. 1998) (noting that "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths"). Here, the defendants cannot fairly be expected to prepare their cases or formulate trial strategies based on the limited reports already disclosed if there is a possibility that other reports prepared by percipient law enforcement officials, whether inculpatory or otherwise, exist that would substantially alter the defendants' approaches to trial.

7.    **Custodial Admissions of Co-Defendants**

Defendants' Request:

*All custodial admissions made by any co-defendant in this case which*

-13-

*the government intends to introduce into evidence at a joint trial.*

Argument:

The defendants request that the government be ordered to provide the requested information at least sixty days prior to trial. The government indicated in a telephone conference with counsel for Mr. Allen that it would provide such material ten days prior to trial; in the context of this case, ten days is clearly inadequate. Depending on the content of the custodial admissions by the co-defendants, the defendants may need to prepare and file motions for severance under Bruton v. United States, 391 U.S. 123 (1968), motions to redact the statements, or other appropriate motions *in limine*. The government certainly can provide these statements in a more timely fashion, as it has already been required to turn them over to the co-defendants who made them, pursuant to Fed. R. Crim. P. 16(a)(1)(B) and Local Rule 116.1(C)(1). It cannot argue, therefore, that it has not yet determined what these statements are.

8.    **Video and Audio Recordings**

Defendants' Request:

> *A list of any and all video or audio recordings that the government intends to introduce into evidence against the individual defendants at trial.*

Argument:

The defendants request that the government be ordered to provide them individually with a list of the particular video and audio recordings it intends to introduce into evidence against them at least sixty days prior to trial. While the government has given the defendants access to a vast array of recordings, it has not indicated which ones it intends to offer against each specific defendant. The

-14-

government indicated in a telephone conference with counsel for Mr. Allen that it would provide this information ten days prior to trial, but that is inadequate. The defendants cannot wait until ten days before trial to begin trial preparations, yet they cannot properly prepare for trial without knowing the scope of the audio and video evidence that will be offered against them. Neither the ends of justice nor the public interest would be served by requiring defense counsel to spend dozens of hours listening to tapes that the government knows are irrelevant to the case against counsel's specific client or preparing a motion to suppress or motions *in limine* respecting tapes which will not be offered against that client. There is no countervailing reason why timely disclosure should not be ordered.

9. **Co-Conspirator Statements**

<u>Defendants' Request:</u>

> *All statements by any co-defendant which the government intends to offer into evidence at trial as co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E).*

<u>Argument:</u>

The defendants request that the government disclose the requested co-conspirator statements at least sixty days prior to trial, not the ten days suggested by the government in a telephone conference with counsel for Mr. Allen. The defendants may need to prepare and file motions to exclude or suppress such statements prior to trial. There is no countervailing reason why disclosure should not be provided within the requested time frame.

## CERTIFICATION

Undersigned counsel certifies, pursuant to Local Rule 116.3(F), that a good faith attempt was made to eliminate or narrow the issues raised in the motion through a telephone conference with opposing counsel.

## REQUEST FOR HEARING

The defendants respectfully request that the Court schedule a hearing on this motion.

Respectfully submitted,
**JOSEPH ALLEN**
By his attorney,

James L. Sultan, BBO #488400
Rankin & Sultan
1 Commercial Wharf North
Boston, MA 02110
(617) 720-0011

**CARLOS ESPINOLA**
By his attorney,

Bradford Eliot Keene, BBO #629440
Keene & Gizzi, P.C.
220 Broadway
Suite 402
Lynnfield, MA 01940
(781) 346-6500

**JAMES GARDNER**
By his attorney,

_Theodre W. Beauparlant (JL)_

Theodore W. Beauparlant, BBO #553763
166 Kenoza Ave.
Haverhill, MA 01830
(978)521-4477


**PHILIP ALBERT, JR.**
By his attorneys,

_Marc R. Salinas (JL)_

Marc R. Salinas, BBO# 644655
Andrews & Updegraph, P.C.
70 Washington Street
Suite 212
Salem, MA 01970
(978) 740-6633


John Andrews
Andrews & Updegraph, P.C.
70 Washington Street
Suite 211
Salem, MA 01970
(978) 740-6633


**JARED KNOWLTON**
By his attorney,

_Michael F. Natola (JL)_

Michael F. Natola, BBO #367580
63 Atlantic Avenue
Boston, MA 02110
(617) 367-1199

-17-

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2005 I served the foregoing document upon the parties by delivering and faxing a copy to:

AUSA David Tobin
Moakley Federal Courthouse
One Courthouse Way, Suite #9200
Boston, MA 02210
FAX (617) 748-3965

and mailing a copy thereof, US mail, postage prepaid, to:

Bradford E. Keene, Esquire
Keene & Gizzi
220 Broadway, Suite #402
Lynnfield, MA 01940

Michael C. Bourbeau, Esquire
Bourbeau & Bonilla
21 Union Street
Boston, MA 02108

Stephen Neyman, Esquire
160 State Street, 8th Floor
Boston, MA 02109

Elliot M. Weinstein, Esquire
228 Lewis Wharf
Boston, MA 02110

Bruce G. Linson, Esquire
220 Commercial Street
Boston, MA 02109

Richard M. Welsh, Esquire
80 Worcester Street, Suite Five
North Grafton, MA 01536

Edward J. O'Reilly, Esquire
46 Milton Street
Gloucester, MA 01930

Theodore W. Beauparlant, Esquire
166 Kenoza Avenue
Haverhill, MA 01830

John Andrews, Esquire
70 Washington Street, Suite #211
Salem, MA 01970

Mark R. Salinas, Esquire
70 Washington Street, Suite #212
Salem, MA 01970

Stephen D. Judge, Esquire
23 Central Avenue, Suite #605
Lynn, Ma 01901

Michael F. Natola, Esquire
McBride & Natola
240 Commercial Street, Suite #2-B
Boston, MA 02109

Roger Witkin, Esquire
Six Beacon Street
Boston, MA 02018

James L. Sultan

-18-