UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

_____

UNITED STATES

v.

JOSEPH ALLEN

_____

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO JOINT MOTION FOR DISCOVERY

**I.  A BILL OF PARTICULARS IS NECESSARY FOR THE DEFENDANT TO PREPARE HIS DEFENSE.**

A bill of particulars is required "if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." *United States v. Sepulveda*, 15 F.3d 1161, 1192-93 (1st Cir.1993), *cert. denied*, 512 U.S. 1223 (1994). A bill of particulars is therefore especially appropriate in this case, where the defendant has not been given sufficient information to ensure that he can prepare a defense and eliminate the possibility of unfair surprise at trial. The defendant does not, as the government claims, seek to preview the government's evidence or theory of the case. He merely wants to know specifically what criminal activity he will have to defend against at trial.

As articulated in the Joint Motion for Discovery, this is a complex drug case. The result of a lengthy investigation, the Indictment charges a conspiracy that spanned approximately eight months, involved at least thirteen individuals, and included at least sixteen transactions charged as

substantive counts. The government has disclosed virtually no information regarding the defendant's alleged involvement in the drug conspiracy. To date, it has disclosed that he was standing outside a restaurant in which a drug sale was supposed to (but did not) take place on one occasion, that he was a passenger in a car which picked up a co-defendant following drug sales on two occasions, and that he spoke to someone at a 7-Eleven store following a drug sale on another occasion. The government evidently expects the defendant prepare his entire trial defense based on this scanty information. That is patently unfair!

The government contends that "the indictment specifically alleges the dates and places of the alleged crimes as well as the nature of the crimes themselves." Government's Response to Joint Motion for Discovery (hereinafter "Response") at 3. While this may be true for some co-defendants on some counts of the indictment, it is incorrect with respect to this defendant. Count One alleges that:

> Beginning on an unknown date but at least by in or about October 2003 and continuing thereafter until on or about June 10, 2004, at Gloucester, Peabody, Danvers and elsewhere in the District of Massachusetts, [the defendants] did knowingly and intentionally combine, conspire, confederate, and agree with each other, and with other persons unknown to the Grand Jury, to distribute, and to possess with intent to distribute, oxycodone, a Schedule II controlled substance....

Indictment at 1-2.

The defendant has not received **any** information regarding actions of his prior to January 2004, yet he is charged with conspiring beginning in October 2003. The government has charged the defendant with engaging in criminal conduct in October, November, and December, 2003, yet the only information the defendant has about this alleged conduct is conclusory language in the Indictment itself: that he conspired with his co-defendants and/or other persons, in Gloucester,

Peabody, Danvers, or somewhere else in Massachusetts. The defendant contends, contrary to the government, that "October 2003" is not a "specific[] ... date" and that "Gloucester, Peabody, Danvers, and elsewhere" is not a specific identification of where the crimes took place. *See* Response at 3. The only substantive count with which the defendant is charged, Count Sixteen, relates to events of June 7, 2004, some eight months after the defendant is alleged to have joined the conspiracy. In short, the defendant has not been apprised of any specific conduct he engaged in prior to June 7, 2004 that is unlawful, yet he is expected to defend against the charge that he had, by that time, already been in a criminal conspiracy for eight months.

Courts dealing with similar cases have recognized the importance of a bill of particulars. In *United States v. Ramirez*, 54 F.Supp.2d 25, 30 (D.D.C. 1999), for example, the court ordered to government to provide a bill of particulars where a narcotics conspiracy allegedly lasted for one year, but the only substantive counts defendants were charged with stemmed from events at the end of that year. The court noted: "A bill of particulars is all the more important in a narcotics conspiracy case because the indictment itself provides so little detail," *id.*, when compared with the general federal conspiracy statute which requires the indictment to list overt acts taken in furtherance of the conspiracy.[1] The court therefore ordered the government to provide a bill of particulars setting forth the names of all co-conspirators, the dates and locations of meeting or conversations not already alleged in the indictment in which the defendants allegedly participated, and the approximate date on which the defendants joined the conspiracy. *Id. See also United States v. Mihaly*, 1993 WL 185334, *2 (N.D.N.Y. 1993) ("defendant is entitled to disclosure of the exact date

---

[1] This case is therefore distinguishable from many of the non-drug conspiracy cases cited by the government in its Response.

that he allegedly *entered* the conspiracy charged in the indictment") (emphasis in original); *United States v. Taylor*, 707 F.Supp. 696, 700 (S.D.N.Y. 1989) (defendant entitled to bill of particulars to establish date he allegedly entered into conspiracy and "dates and locations of any meetings or conversations at which the government will contend that [the defendant] joined the conspiracy").

As to Count Sixteen, the substantive count dealing with June 7, 2004, the government has indeed provided the defendant with some information. However, the defendant is still in the dark about what he is alleged to have done to break the law on that date, given that the information provided is not actually incriminating! Unless the defendant is to be considered guilty of a substantive crime merely because he was in the area of a planned drug deal -- guilt-by-geographical-proximity -- the Indictment and subsequent discovery have not informed him of what factual allegations he must defend against at trial. He should not learn at trial, for the first time, what is he alleged to have done. A bill of particulars is clearly warranted here.

## II. THE GOVERNMENT MISCHARACTERIZES THE DEFENDANT'S REQUEST FOR CUSTODIAL ADMISSIONS OF CO-DEFENDANTS.

The government suggests that it cannot disclose custodial admissions of co-defendants the requested sixty days prior to trial, as it "does not anticipate [counsel for the government] will know sixty days prior to trial which, if any, co-defendants will be called upon to testify." Response at 7. This is utterly irrelevant to the defendant's request. The defendant has not requested custodial admissions of only those co-defendants who will testify at trial, as the government evidently believes, but rather all custodial admissions of co-defendants that may be introduced at a joint trial.

To the extent that the government opposes this request as it has not yet determined what

evidence it intends to use at trial, and will not do so until less than sixty days before trial, the opposition is baseless. Given the nature of this case, any custodial admissions implicating the defendant would naturally be a focus of the defense in preparing for trial; that preparation cannot be postponed until the eve of trial. Likewise, custodial admissions that implicate other co-defendants but not defendant Allen could become central to the defendant's preparation for trial. The government should not be able to limit the defendant's ability to prepare for trial by deliberately postponing its own trial preparations.

Finally, the defendant notes that, contrary to the government's indication that it will provide only written reports, he requested notice of all custodial admissions, regardless of whether they were subsequently reduced to writing, if the government intends to introduce them into evidence at a joint trial.

**III.   THE DEADLINES SUGGESTED BY THE GOVERNMENT ARE INADEQUATE.**

As to the remainder of the discovery requests, the dispute between the government and defendant is one of timing. For the Court's convenience, the proposed deadlines of the two parties are set out in chart form on the following page:

| Subject (Request No.) | Defendant's Request | Government's Proposal |
|---|---|---|
| Expert Witness Summaries (#2) | 60 days before trial | 30 days before trial |
| Prior Bad Acts (#3) | 60 days before trial | 21 days before trial |
| Exculpatory Evidence (#4) | 60 days before trial | 21 days before trial |
| Witness List (#5) | 60 days before trial | 21 days before trial |
| Reports (#6) | 60 days before trial | Has provided most already; Jencks Act materials 14 days before trial |
| Custodial Admissions (#7) | 60 days before trial | 14 days before trial |
| Itemization of Video and Audio Recordings (#8) | 60 days before trial | 10 days before trial |
| Co-Conspirator Statements (#9) | 60 days before trial | 30 days before trial |

As can be seen, the government consistently takes the position that the defendant should have less time to prepare for trial than the defendant seeks. The reasons proffered by the government in support of its proposals are either pretextual, unconvincing, or simply nonexistent, but the result is the same -- the government opposes the defendant's attempt to obtain the necessary information to prepare and mount an effective defense. The Court should see this strategy for what it is -- an effort by the government to obtain a tactical advantage over the defendant by leaving him in the dark until the eve of trial. That strategy is patently unfair and should be rejected.

The criminal justice system is not a game, where the outcome is to be determined by the cleverness of the procedural ploys and gambits of the parties. This is a serious case, both for the public interest and for this defendant, who faces a lengthy and life-altering term of imprisonment if he is convicted. As explained above, this is also a broad, complex case. Even before the defendant was arrested, the government devoted a great deal of manpower to its investigation. There

were at least fourteen law enforcement officers involved in the investigation over the course of at least eight months.[2] This investigative process continued in the three months between the defendant's arrest and his indictment, while the prosecution used the power of the grand jury to question witnesses and gather evidence. Government investigation will doubtless continue up until the trial. Arrayed against this wealth of resources, the defendant, who is indigent, is somehow expected to investigate and prepare his own case. He is not so naive as to expect the playing field to be absolutely even, as it clearly will not be. However, at some point the imbalance of resources becomes so extreme as to deprive the defendant of the possibility of a fair trial unless the Court intervenes.

To provide an effective defense in this case, the defendant and his counsel must perform a variety of tasks. They must research the factual and legal predicates of various motions *in limine* and prepare and file such motions. They must find, retain, and prepare any expert witnesses. They must interview the Commonwealth's witnesses, interview and prepare potential defense witnesses, and search for additional factual information that may be helpful to the defense case. They must formulate and implement a trial strategy based on the investigation of the case. Incredibly, the government suggests that this mountain of preparation should all be done in the two to three weeks preceding trial. The government, not content with its eleven-month head start, continues to construct as many hurdles in the defendant's path as possible. This transparent tactic should be rejected.

The government argues that there is a presumption that the deadlines established by the

---

[2]The reports disclosed thus far in discovery reference the following law enforcement officers: Calcano, Sawyer, Genese, Story, Karamoutopolos, Fisher, Desmond, Aguiler, Sarabia, Guerard, DiTullio, Conners, Sucharski, and Marr.

Local Rules are "reasonable." Response at 6. The deadlines set by the Local Rules are indeed reasonable for simple cases, but for complex, multi-defendant cases such as this one, justice demands that the defendant have additional time to prepare. The Court has the authority to order disclosure at an earlier date than that set by the Local Rules, "if the judge determines that there are factors in the particular case that make it in the interests of justice to do so." Local Rule 117.1(B).

For example, the defendant has requested that he be provided, at least sixty days prior to trial, with a summary of the expert testimony that the government intends to offer at trial. Depending on the content of that summary, the defendant will need either to prepare motions *in limine* to limit or exclude that evidence, prepare to test that evidence via cross-examination, and/or locate, retain, disclose, and prepare an expert of his own, all tasks that cannot be begun until the defendant knows what the substance of the government's expert testimony at trial will be. Remarkably, the government -- which has devoted dozens of investigators and thousands of man-hours over many months to this case, and had the power of indicting the defendant on its own schedule -- suggests that requiring the government to determine what expert evidence it intends to present, therefore giving this indigent defendant all of two months to prepare, "puts an unfair burden on the United States." Response at 4. The defendant fails to grasp the unfairness of this request.

Finally, the defendant notes that the Commonwealth suggests that one reason to delay discovery of evidence intended to be introduced under Rule 404(b) is that "[t]he defendants know what, if any, bad acts they performed that may be brought up by the government during trial." Response at 5. This position might make some sense if, in fact, it can be assumed that the government will attempt to introduce evidence only of admissible and reliable prior bad acts; in short, that the prior bad acts occurred exactly as the government will claim they did. The defendant,

however, has the temerity to suggest that the government **might actually be wrong** about some of these things. Indeed, one of the purposes of pre-trial discovery is to allow the parties to prepare to rebut evidence that they know to be false or misleading, rather than to be simply surprised by it at trial, or to exclude prejudicial information that should not be presented at trial. Federal Rule of Evidence 404(b) allows use of prior bad acts against a defendant in a criminal case only if the prosecution "provide[s] reasonable notice in advance of trial." Sixty days prior to trial is clearly reasonable.

The government's position flies in the face of the most fundamental precepts of the criminal justice system. As Judge, later Justice, Whittaker once wrote in a similar context:

> Nor is it any answer to a motion for a bill of particulars for the government to say: 'The defendant knows what he did, and, therefore, has all the information necessary.' This argument could be valid only if the defendant be *presumed to be guilty*. For only if he is presumed guilty could he know the facts and details of the crime. Instead of being presumed guilty, he is presumed to be innocent. Being presumed to be innocent, it must be assumed 'that he is ignorant of the facts on which the pleader founds his charges'. ... This conclusion seems to me to be elementary, fundamental and inescapable.

*United States v. Smith*, 16 F.R.D. 372, 375 (1954) (citations omitted) (emphasis in original). Just as a defendant cannot be presumed to be guilty, the defendant cannot be presumed to have committed the bad acts in question merely because the government says that he has. It is the adversary process, and not the untested beliefs of the prosecutor, that is the chosen method for ascertaining the truth. That process cannot work if the defendant is not given a reasonable opportunity to prepare his case.

        Respectfully submitted,

        **JOSEPH ALLEN**

        By his attorney,


        <u>/s/ James L. Sultan</u>
        James L. Sultan, BB0 #488400
        Rankin & Sultan
        One Commercial Wharf North
        Boston, MA 02110
        (617) 720-0011

**FILED ELECTRONICALLY ON MAY 9, 2005**