UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

———————————————

UNITED STATES

v.

JOSEPH ALLEN

———————————————

**DEFENDANT'S MEMORANDUM OPPOSING
REVOCATION OF PRETRIAL RELEASE ORDER**

**I.     PRIOR PROCEEDINGS.**

On June 29, 2004, defendant Joseph Allen ["Allen"] was charged with conspiracy to distribute Oxycodone and with a single substantive count of distribution of Oxycodone in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Those same two charges against Allen were incorporated into a multi-defendant indictment returned on September 22, 2004.  The case is currently scheduled for trial before the Honorable Rya W. Zobel in April 2006.

Following his arrest, Allen was held pending a detention hearing on June 2, 2004.  On June 12, 2004, the Court (Swartwood, M.J.) issued a memorandum of probable cause and order of detention.  In his decision (Docket #47), Magistrate Judge Swartwood characterized the evidence against Mr. Allen as "circumstantial and based on inference."  *Id.* at 7.  The Court agreed that if the standard to be applied was proof beyond a reasonable doubt, "it is questionable whether the evidence before me would be sufficient to find that Mr. Allen was a member of this conspiracy."  *Id.* at 8.  In sum, the Court found, the weight of the evidence against Allen was "less than substantial."  *Id.* at

15. Nevertheless, the Court found probable cause.

After reviewing Allen's personal history, the Court concluded that he was not a risk of flight. *Id.* at 19. Nevertheless, due to his prior criminal record, the Court concluded that Allen's release would pose a significant risk to the community. *Id.* at 18. He ordered that Allen be detained pending trial.

Allen filed a motion to revoke the detention order, which was heard by Judge Zobel on August 9, 2004. On that same date, Judge Zobel granted Allen's motion to revoke the detention order and released him on stringent conditions, including electronic monitoring. (Docket #78)

## II.    ALLEN'S PERFORMANCE ON PRETRIAL RELEASE.

Mr. Allen remained on pretrial release without incident for the next 11 months. During much of that time, he held down a job. He was also permitted to attend meetings and family events in the community with leave of Court and to meet with his attorney in Boston. Although Mr. Allen was under considerable scrutiny by local law enforcement officials, to the best of undersigned counsel's knowledge, no violations of his conditions or state or federal law were reported over that period of nearly one year of pretrial release.

On July 28, 2005, Allen submitted a urine sample to Pretrial Services, which was positive for morphine and THC. Allen readily admitted to Pretrial Services that he had been using heroin and marihuana since January 2005, when he lost his job. He also expressed a willingness to participate in a residential drug treatment program in order to combat his longstanding addiction to drugs. On that same date, Allen signed a consent order, agreeing to the modification of his conditions of release to include drug treatment as deemed necessary by Pretrial Services. (Docket #222)

Allen voluntarily entered the Spectrum detox program in Westboro on July 29, 2005. He was

subsequently transferred to the residential drug treatment program there.  Allen participated in that program as a resident for nearly two months until the events leading to his termination on September 26, 2005.  Allen has been drug-free for the past two months.

## II.     THE EVENTS OF SEPTEMBER 26-28, 2005.

At approximately 6:00 p.m. on September 26, 2005, undersigned counsel received a phone call from his client, Joseph Allen.  Allen reported that he had broken a window at the treatment program and that he had been informed he was going to be terminated immediately as a result of that infraction.  Mr. Allen was upset, expressed remorse for breaking the window, and indicated his strong desire to stay in the program since he had already put so much time and effort into seeking to break his addiction to drugs.  Undersigned counsel urged Allen to work with the staff in an effort to avoid termination.  Allen called undersigned counsel back several times between approximately 6:30 p.m. and 8:00 p.m., indicating that his efforts had been fruitless and that he understood that he was being terminated forthwith.  Undersigned counsel told Allen that if he was, in fact, terminated, he should immediately go home to his residence in Gloucester and remain there pending further instructions from Pretrial Services.  Allen indicated that he would do so.  *Affidavit of James L. Sultan*, submitted herewith, ¶¶ 2-3.

During the same time span (approximately 6:00 p.m. to approximately 8:00 p.m.), undersigned counsel sought to contact Pretrial Services to explain what was happening and seek further instructions for his client.  There was no answer at the Pretrial Services phone number.  Counsel recalls leaving separate messages for Pretrial Services Officer Judith A. Oxford (who had been supervising Allen in drug treatment) and for Chief Pretrial Services Officer John R. Riley.  In those messages, undersigned counsel explained to Pretrial Services what Mr. Allen had related and

that he would be returning to his home in Gloucester pending further instructions from Pretrial Services. *Id.* at ¶ 4.

Undersigned counsel spoke to Pretrial Services Officer Oxford on September 27, 2005. At that time, Officer Oxford stated that she had been in touch with Allen and that she was in the process of investigating what had occurred the previous evening. Undersigned counsel spoke with Officer Oxford again on the morning of September 28th. She indicated that she wanted to see Allen in her office. She also discussed the possibility of a hearing before the Court on the following day, September 29th. *Id.*, at ¶¶ 5-6.

At the request of undersigned counsel, Allen came to his office at approximately 11:30 a.m. on September 28th. Allen, accompanied by undersigned counsel, then went to the Pretrial Services Office at the courthouse. Upon arrival, Allen was drug-tested by Chief Pretrial Services Officer Riley, who stated that he was "clean." Allen was then taken into custody pursuant to a warrant which had apparently been issued at the request of Officer Oxford. Later that day, undersigned counsel was informed by Chief Riley that Spectrum House refused to accept Allen back into the program. *Id.* at ¶ 7.

## IV.    SUMMARY OF APPLICABLE LAW.

Pursuant to statute, 18 U.S.C. § 3148(b), an order of pretrial release may be revoked if, after a hearing, the Court finds that there is "clear and convincing evidence that the person has violated [a] condition of release," and that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release." Thus, at a revocation hearing, the first question is whether there has, in fact, been a

violation. If so, the Court must revisit the determination under 18 U.S.C. § 3142(g), as to whether there are any conditions which will suffice to reasonably assure the appearance of the defendant as required and the safety of the community.

## V.    THE VIOLATION.

Based on the materials submitted to the Court by Pretrial Services, it appears there was at least a technical violation of the conditions of the defendant's release since he left the residential treatment program at Spectrum House without being formally terminated pursuant to that program's regulations. Yet the paperwork submitted by Pretrial Services leaves the Court with the misleading impression that Allen simply ran away from the program and holed up at his "girlfriend's house" until his arrest. **That is far from what actually happened**. Rather, after spending eight weeks in residential treatment and remaining clean of drugs throughout that period, Allen violated a program rule by breaking a window. He believed that he was going to be terminated from the program based upon that violation. He had no intention or desire to leave. He did not run away. Rather, at all times, he remained in close contact with his attorney and, through counsel, with Pretrial Services. When he left the program, Allen returned to the home in Gloucester where he has resided for the past five years to await further instructions from Pretrial Services. He shares that home with his longtime girlfriend, Alicia Parisi, and their child. Ms. Parisi is pregnant with their second child and is scheduled to give birth in mid-November.

Allen remained at that residence pending further instructions from Pretrial Services. When counsel told him to come to Boston to meet with Pretrial on the morning of September 28th, he did so immediately. He appeared voluntarily at the courthouse, where he was tested for drugs and taken into custody. This entire sequence of events should be taken into account by the Court in

adjudicating the government's motion to revoke bail.

## VI.    FACTORS TO BE CONSIDERED UNDER § 3142(g).

### A.    The Nature of the Offense Charged/Weight of the Evidence.

The factual allegations against Allen, set forth in the Court's previously-entered order of detention, are that Allen was standing outside of a restaurant in which a drug deal was supposed to take place on one occasion and that he was a passenger in a car which picked up a co-defendant following drug deals on two occasions. The 50-page affidavit of the case agent submitted in support of the criminal complaint is devoid of any evidence whatsoever that Allen knew that the drug deals were going to occur on those occasions or that he had any intentional role in facilitating those transactions. During the year since the indictment was returned, the government has produced no discovery implicating Allen in any of the numerous other allegations set forth in the indictment. Accordingly, while there is no way to know at this juncture how this case will turn out, there is a substantial likelihood that the defendant, who is presumed innocent, will be acquitted by a jury at trial. Indeed, there is a real possibility that the case against him will never even get to a jury before a judgment of acquittal enters.

In order to give the Court a sense of the stakes involved in the case, it is noteworthy that Giuseppe Torrente, a co-defendant who recently pled guilty to conspiracy and two substantive counts in this case, without cooperation, was sentenced to serve two months in the custody of the Attorney General, along with two years of supervised release. These circumstances should militate strongly against depriving defendant Allen of his liberty for the next six months or more, while he awaits trial.

### B.    Risk of Flight.

As Magistrate Judge Swartwood correctly concluded in his initial detention order, the release of Joseph Allen pending trial poses no cognizable risk of flight.  Allen is a lifelong resident of Gloucester.  He has a long-term relationship with his girlfriend, Alicia Parisi, who is pregnant with their second child.  Allen and Parisi have lived together in the basement apartment of her parents' house for more than five years.

Allen has a number of relatives in the Gloucester area.  He has never missed a court date. Moreover, Allen is indigent and lacks the wherewithal to flee, even if he were inclined to do so. Since the evidence against him is so insubstantial, there would be little or no incentive for him to flee.  Finally, during more than 13 months which elapsed between his release on bail by Judge Zobel on August 9, 2004 and his voluntary appearance at the courthouse on September 28, 2005, Allen's whereabouts were at all times known to the Court through Pretrial Services.  In sum, Allen is not a risk of flight, a fact which militates strongly in favor of release pending trial.

### C.    Dangerousness.

The remaining factor, set forth at 18 U.S.C. § 3142(g)(4), is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  Although Allen has a substantial prior criminal record, he was not charged with any offense during the 13 months he has been on pretrial release.  As Judge Zobel properly found, there clearly are conditions of release which will adequately protect the community pending Allen's trial.  Those conditions should properly include, *inter alia*, additional drug treatment, frequent drug testing, and house arrest.

-7-

## CONCLUSION

Under all of the circumstances presented here, Joseph Allen's bail should not be revoked. Rather, his conditions of release should be reinstated, with appropriate modifications ordered by the Court. Joseph Allen is a drug addict trying to kick a powerful drug habit. As with all drug addicts, there will inevitably be some bumps along the challenging road to recovery. Such a bump occurred on September 26th. Nevertheless, it was only a bump.

It would be a great tragedy and waste to lock Allen up for the next six months or more while he awaits trial. Such a result would effectively undo all of the positive work he has accomplished over the past two months in a demanding, residential drug treatment program and squander all of the resources which the Court has devoted to that laudable effort. Moreover, locking Allen up is simply not necessary. He is not a risk of flight, and there are conditions of release which will adequately protect the community. Accordingly, the government's motion to revoke bail should be denied.

Respectfully submitted,

**JOSEPH ALLEN**
By his attorney,

_____/s/James L. Sultan_____
James L. Sultan, BB0 #488400
Rankin & Sultan
1 Commercial Wharf North
Boston, MA 02110
(617) 720-0011

### CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing document upon the government by e-mailing it to AUSA David Tobin at David.Tobin@usdoj.gov; Chief Pretrial Services Officer John R. Riley at John_Riley@map.uscourts.gov; and to Pretrial Services officer Judith Oxford at Judth_Oxford@map.uscourts.gov on September 30, 2005.

___/s/ James L. Sultan_____

-8-