UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSEPH ALLEN,<br>       Defendant, | CRIMINAL ACTION<br>NO. 04-10288-RWZ |

**MEMORANDUM AND ORDER ON PRETRIAL SERVICES' REQUEST FOR REVOCATION OF JOSEPH ALLEN'S RELEASE ON CONDITIONS**
October 5, 2005

SWARTWOOD, C.M.J.

I.  Background

On June 29, 2004, a Criminal Complaint (Criminal Action No. 04-1809-CBS)(Docket No. 1) was filed, charging Joseph Allen ("Mr. Allen") and others, with conspiracy to distribute oxycodone and knowingly and intentionally distributing oxycodone, in violation of 21 U.S.C. §§846 and 841(a)(1).

At Mr. Allen's initial appearance on June 30, 2004, in connection with the Criminal Complaint, the Government moved for a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(C)(Mr. Allen is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act") and (f)(2)(A)(risk of flight)

A consolidated probable cause/detention hearing was held on July 2, 2004 and following that hearing, I ordered Mr. Allen detained on the grounds that he poses a danger to the community and that there were no conditions or combination of conditions that I could impose that would protect the community if he were released. (Docket No. 47).

Mr. Allen appealed my detention order to Judge Zobel and after hearing, Judge Zobel released Mr. Allen on stringent conditions of release including electronic monitoring and home incarceration. (Docket No. 78). Additionally, on August 9, 2004, Judge Zobel ordered that Mr. Allen submit to random drug testing.

On September 22, 2004, a multi-count Indictment was returned charging Mr. Allen and others, with conspiracy to possess with intent to distribute and distribution of oxycodone and aiding and abetting. (Docket No. 90).

On July 28, 2005, Mr. Allen tested positive for morphine and THC. At that time, Mr. Allen admitted to Pretrial Services that he had been using heroin and marijuana since January 2005 when he had lost his job. Mr. Allen admitted that he had a long-standing drug addiction and consented to participate in a residential drug treatment program. Mr. Allen's conditions of release were then modified to provide for drug treatment and this modification was approved by Judge Zobel on July 28, 2005. (Docket No. 222).

Mr. Allen was admitted to Spectrum House in Westborough, Massachusetts on July 29, 2005 for treatment of his drug addiction.

Mr. Allen left Spectrum House on September 26, 2005, without notice and without permission. Thereafter, Judith Oxford, the Drug Treatment Specialist for Pretrial Services, filed a Petition for Revocation of Mr. Allen's release. (Docket No. 246).

## II. Findings of Fact

1. On July 29, 2005, Mr. Allen was admitted to Spectrum House for detoxification and after a few days was transferred to the residential drug treatment program at Spectrum House. Mr. Allen's treatment was uneventful and reports of his on-going treatment were positive.

2. During the latter part of September 2005, Mr. Allen discussed with a unit coordinator at Spectrum House, Nick DeMauro, unsettling news he had received concerning his potential sentence. Shortly thereafter, on September 23, 2005, Mr. Allen had a verbal altercation with another Spectrum patient. As a result of that confrontation, the other Spectrum patient was terminated from the program and Mr. Allen received a termination warning for "aggressive behavior toward fellow resident." Govt. Ex. 1. That warning further provided that Mr. Allen was to "complete an anger packet and report to the Program Manager on September 28, 2005". Id.

3. On September 26, 2005, Mr. Allen reported to Nick DeMauro that he had broken a window at Spectrum House when he threw a milk crate from the smoking area back toward a loading dock. Mr. DeMauro concluded that the throwing of the milk crate was in anger and noted that Mr. Allen was agitated during their conversation. <u>Govt. Ex. 2</u>. Mr. Allen acknowledged that breaking a window in anger was violation of a "cardinal rule" that would subject him to possible termination from the program. Mr. DeMauro clearly stated to Mr. Allen that he doubted that Mr. Allen would be terminated and that he should stay in treatment until this incident could be reported and worked out. That conversation occurred between 4:30 and 5:00 p.m. on September 26, 2005. Sometime after 7:00 p.m. that evening, Mr. Allen called his girlfriend, Elisa Perisi, and told her that he had been terminated from the program and that she should come to Westborough to pick him up. Additionally, Mr. Allen contacted his lawyer and told his lawyer that he had been terminated from the program. Both Mr. Allen and his lawyer left voice mail messages for Ms. Oxford stating that Mr. Allen had been terminated from Spectrum House and awaited her instructions as to what to do next.

4. On September 27, 2005, Mr. Allen and his lawyer met with Ms. Oxford. At that time, Mr. Allen tested negative for any use of illegal drugs.

4

5.  Subsequently, Ms. Oxford was informed by the Director of Spectrum House that it would not, under any circumstances, accept Mr. Allen back into its drug treatment program.

### III. Discussion

Section 3148(b) provides that the judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer –

(1) finds that there is –

    (A) probable cause to believe that the person has committed a Federal, State or local crime while on release; or

    (B) . . .

(2) finds that –

    (A) based on the factors set forth in §3142(g) of this Title, there is no condition of combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person in the community; or

    (B) the person is unlikely to abide by any condition or combination of conditions of release.

In this case, Pretrial Services and the Government assert that Mr. Allen has breached his conditions of release by leaving Spectrum House without authorization.

A.  <u>Whether Mr. Allen Violated His Conditions of Release</u>

Mr. Allen told his lawyer, his girlfriend, and Ms. Oxford that he had been terminated from Spectrum House and that is the reason

he left on the evening of September 26, 2005. Mr. DeMauro testified that he had advised Mr. Allen not to leave the program and that he doubted that he would be terminated from the program as a result of breaking a window. I find that Mr. Allen lied to his lawyer, his girlfriend and Pretrial Services as to reasons for leaving Spectrum House and that there is clear and convincing evidence that he breached his conditions of release by leaving Spectrum House without authorization.

        B.   <u>Whether Detention Is Warranted</u>

In order to determine whether or not there are conditions of release that will assure that Mr. Allen will not pose a danger to the community or pose a risk of flight, I am required to examine the provisions of Section 3142.

First, I have previously found that Mr. Allen does not pose a risk of flight. Even though Mr. Allen now understands that he faces a potential, substantial sentence, I continue to find that Mr. Allen does not pose a risk of flight. I make this finding based on Mr. Allen's substantial ties to his community and the fact that his girlfriend is about to give birth to his second child in November.

Second, as to whether Mr. Allen poses a danger to the community, I continue to believe that he does primarily because of his past criminal record involving assaultive behavior which is consistent with the termination warning he received at Spectrum

House for "aggressive behavior toward fellow resident". <u>Govt. Ex. 1</u>. However, in mitigation, Mr. Allen's lawyer points out that during the eleven months that Mr. Allen was on release, he was not involved in the sale of illegal drugs nor did he assault anyone while on release. However, it would have been almost impossible for Mr. Allen to have either sold drugs or to have assaulted anyone while he was on release because he was incarcerated at home on electronic monitoring. The only interaction Mr. Allen had with other individuals was at Spectrum House which did result in aggressive behavior. Therefore, on balance, I find that Mr. Allen would pose a danger to the community if he were released.

Finally, based on the totality of the evidence presented during the revocation hearing, I find from that evidence that Mr. Allen is unlikely to abide by any condition or combination of conditions that I may impose for his release. I base this finding on the fact that when he was released on home detention and electronic monitoring, he continued to use illegal drugs and when he was restricted to a drug treatment program, he left that program without authorization.

IV. <u>Conclusion</u>

For the above reasons, I find that Mr. Allen's conditions of release should be revoked and that he should be detained pending trial.

V. <u>Order of Detention Pending Trial</u>

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Mr. Allen be committed to the custody of the Attorney General, or her designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Mr. Allen be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Allen is detained and confined shall deliver Mr. Allen to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/Charles B. Swartwood, III
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE