UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

_____

UNITED STATES

v.

JOSEPH ALLEN

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO REVOKE DETENTION ORDER**

**I.   PRIOR PROCEEDINGS.**

On June 29, 2004, a criminal complaint was filed charging multiple individuals with conspiracy to distribute Oxycodone and substantive distribution of Oxycodone in violation of 21 U.S.C. §§ 846 and 841(a)(1). Defendant Joseph Allen was charged with conspiracy and a single substantive offense. A consolidated probable cause/detention hearing was held on July 2, 2004. On July 12, 2004, the Court (Swartwood, M.J.) issued a memorandum of probable cause and order of detention. (Docket No. 47).

In his decision, Magistrate Judge Swartwood characterized the evidence against Mr. Allen as "circumstantial and based on inference." *Id.* at 7. Magistrate Judge Swartwood agreed that if the standard to be applied was proof beyond a reasonable doubt, "it is questionable whether the evidence before me would be sufficient to find that Mr. Allen was a member of this conspiracy." *Id.* at 8. In sum, the Court found, the weight of the evidence against Allen was "less than substantial." *Id.* at 15.

After reviewing Allen's personal history, Magistrate Judge Swartwood concluded that he

was not a risk of flight. *Id.* at 19. Nevertheless, due to his prior criminal record, the Court ordered that Allen be detained pending trial.

Allen filed a motion to revoke the detention order, which was heard by this Court (Zobel, J.) on August 9, 2004. On that same date, this Court granted Allen's motion to revoke the detention order and released him on stringent conditions, including electronic monitoring. (Docket No. 78).

## II.     ALLEN'S PERFORMANCE ON PRETRIAL RELEASE.

Mr. Allen remained on pretrial release without incident for the next 11 months. During a substantial portion of that time, he held down a job. He was also permitted to attend Alcoholics Anonymous meetings and family events in the community and to meet with his attorney in Boston with prior leave of Court. Although Mr. Allen was under considerable scrutiny by local law enforcement officials, he was not charged with any criminal offense during that nearly one year of pretrial release.

On July 28, 2005, Allen submitted a urine sample to Pretrial Services, which was positive for morphine and THC. Allen readily admitted to Pretrial Services that he had been using heroin and marihuana since January 2005, when he lost his job. He also expressed a willingness to participate in a residential drug treatment program in order to combat his longstanding addiction to drugs. On that same date, Allen signed a consent order, agreeing to the modification of his conditions of release to include drug treatment as deemed necessary by Pretrial Services. (Docket No. 222).

Allen voluntarily entered the Spectrum House detox program in Westboro on July 29, 2005. He was subsequently transferred to the residential drug treatment program there. Allen participated

in that program as a resident for nearly two months until the events of September 26, 2005. Allen has been drug-free since that time. Until the events discussed below, Allen's progress reports at Spectrum House were satisfactory.

**III.    THE EVENTS OF SEPTEMBER 26-28, 2005.**

At approximately 6:00 p.m. on September 26, 2005, undersigned counsel received a phone call from his client, Joseph Allen. Allen reported that he had broken a window at the treatment program and that he had been informed he was going to be terminated immediately as a result of that infraction. Mr. Allen was upset, expressed remorse for breaking the window, and indicated his strong desire to stay in the program since he had already put so much time and effort into seeking to break his addiction to drugs. Undersigned counsel urged Allen to work with the staff in an effort to avoid termination. Allen called undersigned counsel back several times between approximately 6:30 p.m. and 8:00 p.m., indicating that his efforts had been fruitless and that he understood that he was going to be terminated forthwith. Undersigned counsel told Allen that if he was, in fact, terminated, he should immediately go home to his residence in Gloucester and remain there pending further instructions from Pretrial Services. Allen indicated that he would do so. *Affidavit of James L. Sultan*, submitted with Defendant's Memorandum Opposing Revocation of Pretrial Release Order and attached hereto as Exhibit 1, ¶¶ 2-3.

During the same time span (approximately 6:00 p.m. to approximately 8:00 p.m.), undersigned counsel sought to contact Pretrial Services to explain what was happening and seek further instructions for his client. There was no answer at the Pretrial Services phone number. Counsel recalls leaving separate messages for Pretrial Services Officer Judith A. Oxford (who had

been supervising Allen in drug treatment) and for Chief Pretrial Services Officer John R. Riley. In those messages, undersigned counsel explained to Pretrial Services what Mr. Allen had related and that he would be returning to his home in Gloucester pending further instructions from Pretrial Services. *Id.* at ¶ 4.

Undersigned counsel spoke to Pretrial Services Officer Oxford on September 27, 2005. At that time, Officer Oxford stated that she had been in touch with Allen and was in the process of investigating what had occurred the previous evening. Undersigned counsel spoke with Officer Oxford again on the morning of September 28. She indicated that she wanted to see Allen in her office. She also discussed the possibility of a hearing before the Court on the following day, September 29. *Id.*, at ¶¶ 5-6.

At the request of undersigned counsel, Allen came to his counsel's office at approximately 11:30 a.m. on September 28. Allen, accompanied by undersigned counsel, then went to the Pretrial Services Office at the courthouse. Upon arrival, Allen was drug-tested by Chief Pretrial Services Officer Riley, who stated that he was "clean." Allen was then taken into custody pursuant to a warrant which had apparently been issued at the request of Officer Oxford. Later that day, undersigned counsel was informed by Chief Riley that Spectrum House would not accept Allen back into the treatment program. *Id.* at ¶ 7.

**IV.    REVOCATION PROCEEDINGS.**

On October 3, 2005, a revocation hearing was held before Magistrate Judge Swartwood. On October 5, 2005, Magistrate Judge Swartwood entered a Memorandum and Order on Pretrial Services' Request for Revocation of Joseph Allen's Release on Conditions. (Docket No. 248). The

magistrate judge found that Allen had violated a condition of his release by leaving Spectrum House without authorization. *Id.* at 6. He found that Allen was not a risk of flight, based in part on his substantial ties to the community and the fact that his girlfriend is expecting to give birth to his second child in November. *Id.* The magistrate judge found, however, that Allen was a danger to the community. He wrote:

> I continue to believe that he does [pose a danger] primarily because of his past criminal record involving assaultive behavior which is consistent with the termination warning he received at Spectrum House for "aggressive behavior toward fellow resident".

*Id.* at 7. The magistrate judge found that Allen "is unlikely to abide by any condition or combination of conditions that I may impose for his release." *Id.* He therefore ordered Allen detained pending trial. *Id.*

V.  **SUMMARY OF APPLICABLE LAW.**

Pursuant to 18 U.S.C. § 3148(b), an order of pretrial release may be revoked if, after a hearing, the Court finds that there is "clear and convincing evidence that the person has violated [a] condition of release." If the Court finds that there was a violation, it must determine whether there are any conditions which will suffice to reasonably assure the appearance of the defendant as required and the safety of the community and whether the defendant is "unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. §3148(b)(2). In determining whether the defendant's appearance and the safety of the community can be assured, the Court shall take into account the factors listed in §3142(g), including the nature and circumstances of the offense charged, the weight of the evidence against the defendant, the history and character of the defendant, and the nature and seriousness of the danger to any person or the community that would be posed by pretrial

release.  18 U.S.C. §3142(b)(2)(A).

## VI. THE VIOLATION.

Based on the evidence presented by Pretrial Services, the magistrate judge was justified in concluding (and the defendant conceded) that there was, at least, a technical violation of the defendant's conditions of release in that he left the residential treatment program at Spectrum House without being formally terminated pursuant to that program's regulations.  Nonetheless, it is important to clarify what actually happened.  The Pretrial Services Memorandum gave the misleading impression that Allen "fled" from the program and holed up at his girlfriend's house until his arrest.  **That is far from what actually happened**.  Rather, after spending eight weeks in residential treatment and remaining clean of drugs throughout that period, Allen violated a program rule by breaking a window.  He believed that he was going to be terminated from the program based upon that violation coupled with a prior warning he had received.  He had no intention or desire to leave.  He did not "flee."  Rather, at all times, he remained in close contact with his attorney and, through counsel, with Pretrial Services.  When he left the program, Allen returned to the home in Gloucester where he has resided for the past five years to await further instructions from Pretrial Services.  He shares that home with his longtime girlfriend, Alicia Parisi, and their child.  As noted by the magistrate judge, Ms. Parisi is pregnant with their second child and is scheduled to give birth in mid-November.

Allen remained at that residence pending further instructions from Pretrial Services.  When counsel told him to come to Boston to meet with Pretrial Services on the morning of September 28, he did so immediately.  He appeared voluntarily at the courthouse, where he was tested for drugs

and taken into custody. This entire sequence of events should be taken into account by the Court. Allen may have exercised poor judgment in deciding to leave Spectrum House when he had not been formally terminated, but there is not one shred of evidence that he did so with any intention of hiding from the authorities or fleeing the jurisdiction. On the contrary, he made numerous efforts to remain in contact with Pretrial Services, and reported to the courthouse when asked to do so.

## VII.   FACTORS TO BE CONSIDERED UNDER § 3142(g).

### A.   The Nature of the Offense Charged and Weight of the Evidence.

The factual allegations against Allen, set forth in the magistrate judge's Memorandum of Probable Cause and Order of Detention (Docket No. 47), are that Allen was standing outside of a restaurant in which a drug deal was supposed to take place on one occasion, and that he was a passenger in a car which picked up a co-defendant following drug deals on two occasions. The 50-page affidavit of the case agent submitted in support of the criminal complaint is devoid of any evidence whatsoever that Allen knew that the drug deals were going to occur on those occasions or that he had any intentional role in facilitating those transactions. As the magistrate judge characterized it, the evidence against Allen thus far disclosed is "less than substantial." During the sixteen months since the indictment was returned, the government has produced no discovery implicating Allen in any of the numerous other allegations set forth in the indictment. Accordingly, while there is no way to know at this juncture how this case will turn out, there is a substantial likelihood that the defendant, who is presumed innocent, will be acquitted by a jury at trial. Indeed, there is a real possibility that the case against him will never even get to a jury before a judgment of acquittal enters.

In order to give the Court a sense of the stakes involved in the case, it is noteworthy that Giuseppe Torrente, a co-defendant who recently pled guilty to conspiracy and two substantive counts in this case, without cooperation, was sentenced to serve two months in the custody of the Attorney General, along with two years of supervised release. (Docket No. 241). One other defendant, Keith Behsman, has pled guilty and has been sentenced. **All other defendants in the case are on pretrial release.**[1] These circumstances should militate strongly against depriving defendant Allen of his liberty for the next five months or more while he awaits trial.

B. **Risk of Flight.**

As Magistrate Judge Swartwood correctly concluded in his detention order, Joseph Allen "does not pose a risk of flight." Memorandum and Order at 6. Allen is a lifelong resident of Gloucester. He has a long-term relationship with his girlfriend, Alicia Parisi, who is pregnant with their second child and expects to give birth in November. Allen and Parisi have lived together in the basement apartment of her parents' house for more than five years.

Allen has a number of relatives in the Gloucester area. He has never missed a court date. Moreover, Allen is indigent and lacks the wherewithal to flee, even if he were inclined to do so. Since the evidence against him is so insubstantial, there would be little or no incentive for him to flee. Finally, during more than 13 months which elapsed between his release on bail by Judge Zobel on August 9, 2004 and his voluntary appearance at the courthouse on September 28, 2005, Allen's whereabouts were at all times known to the Court through Pretrial Services. In sum, Allen is not

---

[1]*See* Dkt. No. 136 (Carlos Espinola); Dkt. No. 137 (Jose Melo); Dkt. 231, electronic Order dated 10/3/05 (Joseph Baldassano); Dkt. 58 (Matthew Cream); Dkt. 104 (Jason Matthews); Dkt. 254 (Jonathan Mitchell); Dkt. 24 (James Gardner); Dkt. 21 (Philip Albert, Jr.); Dkt. 251 (Jared Knowlton); Dkt. 61 (Archibald Macleod).

a risk of flight, a fact which militates strongly in favor of release pending trial.

    **C.    Dangerousness.**

18 U.S.C. § 3142(g)(4) mandates consideration of "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Although Allen has a substantial prior criminal record, all of his prior offenses are misdemeanors under Massachusetts law. Further, he was not charged with any criminal offense during the 13 months he was on pretrial release. As this Court previously found, there clearly are conditions of release which will adequately protect the community pending Allen's trial. Those conditions should properly include, *inter alia*, additional drug treatment[2], frequent drug testing, and home confinement except for Court-approved travel.

**VIII.  LIKELIHOOD OF COMPLIANCE.**

The violation -- leaving Spectrum House without formal termination -- in this case certainly does not demonstrate that Allen would be unlikely to comply with any conditions of release. On the contrary, the defendant has, with two exceptions, complied completely with the often-onerous conditions of release for over thirteen months. He has maintained contact with Pretrial Services and appeared voluntarily when requested. This positive track records indicates that there is no reason to believe that he would not comply with appropriate conditions set by this Court.

---

[2] For example, the Addison Gilbert Hospital Discovery Program in Gloucester, Massachusetts, offers an intensive out-patient drug treatment program (9 a.m. to 3 p.m., daily) in group format. The program has an emphasis on dealing with stress, addiction recovery, and education. It lasts for two to four weeks and includes two daily 12-step meetings to help the patient begin building outside support systems. Counsel for the defendant has ascertained that this program currently has openings.

## IX.     CONCLUSION.

Under all of the circumstances presented here, the magistrate judge's order of detention should be revoked. The defendant's prior conditions of release should be reinstated, with appropriate modifications ordered by the Court. Joseph Allen is a drug addict trying to kick a deeply-rooted, longstanding drug habit. As with all drug addicts, there will inevitably be some bumps along the challenging road to recovery. Such a bump occurred on September 26th. Nevertheless, it was only a bump.

It would be a great tragedy and waste to lock him up for the next five months or more while he awaits trial. Such a result would effectively undo all the positive work he accomplished over the two months he spent in a demanding, residential drug treatment program and squander all of the resources which the Court devoted to that laudable effort. It would require him to sit in jail for a protracted period in a case where the evidence against him is strikingly weak and his co-defendants are free on pretrial release. Given the sentence imposed in co-defendant Torrente's case, six months could well be more than Allen would serve even if he were convicted! Most importantly, locking Allen up is not necessary or appropriate under the factors identified in §3148 and §3142. It is simply not correct, as the magistrate judge concluded, that no combination of release conditions will reasonably assure the safety of the community or that the defendant is unlikely to comply with any conditions. Therefore, the defendant requests that the Court revoke the magistrate judge's detention order forthwith and order his release on reasonable conditions.

REQUEST FOR HEARING

The defendant requests that the Court schedule a hearing on this motion at its earliest convenience.

        Respectfully submitted,

        **JOSEPH ALLEN**

        By his attorney,


        /s/ James L. Sultan
        James L. Sultan, BBO #488400
        Rankin & Sultan
        One Commercial Wharf North
        Boston, MA 02110
        (617) 720-0011

**CERTIFICATE OF SERVICE**

    I hereby certify that I have served the foregoing document upon the government by e-mailing it to AUSA David Tobin at David.Tobin@usdoj.gov and to Pretrial Services officer Judith Oxford at Judth_Oxford@map.uscourts.gov on October 31, 2005..

                                          /s/ James L. Sultan
                                         James L. Sultan

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

_____

UNITED STATES

v.

JOSEPH ALLEN

_____

**AFFIDAVIT OF JAMES L. SULTAN IN SUPPORT OF
DEFENDANT'S MEMORANDUM OPPOSING
REVOCATION OF PRETRIAL RELEASE ORDER**

James L. Sultan, being duly sworn according to law, hereby deposes and says as follows:

1. I am a member in good standing of the Bar of this Court and counsel to the defendant in the above-captioned criminal case. I make this affidavit based upon personal knowledge.

2. At approximately 6:00 p.m. on September 26, 2005, I received a phone call from my client, Joseph Allen. Allen reported that he had broken a window at the treatment program at Spectrum House and that he had been informed that he was going to be terminated immediately as a result of that infraction. Mr. Allen was upset, expressed remorse for breaking the window, and indicted his strong desire to stay in the program since he had already put so much time and effort in seeking to break his addiction to drugs. I urged Allen to work with the staff in an effort to avoid termination.

EXHIBIT 1

3. Allen called me back several times between approximately 6:30 p.m. and 8:00 p.m., ultimately indicating that his efforts had been fruitless and that he understood that he was being terminated forthwith. I told Allen that if he was, in fact, terminated, he should immediately go home to his residence in Gloucester and remain there pending further instructions from Pretrial Services.

4. During the same time span, I sought to contact Pretrial Services to explain what was going on and to seek further instructions. There was no answer at the Pretrial Services phone number. I recall leaving separate voicemail messages for Pretrial Services Officer Judith A. Oxford and for Chief Pretrial Services Officer John R. Riley. In those messages, I explained what Mr. Allen had related and that he would be returning to his home in Gloucester pending further instructions from Pretrial Services. I did not receive a call back on September 26th.

5. I did speak to Pretrial Services Officer Oxford on September 27th. Officer Oxford stated that she had been in touch with Allen and that she was in the process of investigating what had occurred the previous evening.

6. I spoke again with Officer Oxford on the morning of September 28th. She told me that she wanted to see Allen in her office that day. She also discussed with me the possibility of scheduling a hearing before the Court on the following day, September 29th, to address Allen's bail status.

7. I called Allen and asked him to come to my office on the morning of September 28th. He arrived at approximately 11:30 a.m. I then accompanied Allen to the Pretrial Services Office at the courthouse. Upon arrival, Allen was drug-tested by Chief

Pretrial Services Officer Riley, who told me that Allen was "clean." Allen was then taken into custody pursuant to a warrant which had apparently been issued at the request of Officer Oxford. Later that day, I was informed by Chief Riley that Spectrum House was refusing to accept Allen back into the program.

Signed and sworn to under the pains and penalties of perjury this 30th day of September 2005.

_____/s/James L. Sultan_____
James L. Sultan

**CERTIFICATE OF SERVICE**

I hereby certify that I have served the foregoing document upon the government by e-mailing it to AUSA David Tobin at David.Tobin@usdoj.gov; Chief Pretrial Services Officer John R. Riley at John_Riley@map.uscourts.gov; and to Pretrial Services officer Judith Oxford at Judth._Oxford@map.uscourts.gov on September 30, 2005.

___/s/ James L. Sultan_____

EXHIBIT 1