UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

———————————

UNITED STATES

v.

JOSEPH ALLEN

———————————

**DEFENDANT'S PRETRIAL MOTION FOR DISCOVERY**

Joseph Allen ["Allen"], the defendant in the above-captioned criminal case, hereby moves this Court to order the government to produce to his counsel the materials specified below forthwith. This discovery is necessary for the defendant to prepare for trial effectively and to prevent any avoidable continuances during the course of the trial.

**I.    FULL STATEMENT BY JOSEPH BALDASSANO DURING DEBRIEFING ON MARCH 14, 2006.**

Based on prior discovery, the defendant anticipates that a key witness at trial for the government will be co-defendant Joseph Baldassano, who will testify as a cooperating witness. Baldassano was, according to the government, the primary supplier of OxyContin within the charged conspiracy. A number of co-defendants allegedly obtained OxyContin from Baldassano and sold it to end users and undercover agents. The government alleges that Allen worked for Baldassano as part of the conspiracy and in one substantive count.

On March 14, 2006, the government sent the defendant a letter that, *inter alia*, contained a description of part of an interview of Baldassano conducted at the United States Attorney's Office

on March 14, 2006. *See* March 14, 2006 Letter, *attached hereto as* Exhibit 1. In that letter, the government stated, in pertinent part, that Baldassano had informed the government that:

> Allen repeatedly offered to pick up drugs for Mr. Baldassano, but Baldassano never permitted Allen to do so. Allen also offered to collect debts owed to Mr. Baldassano by Mr. Pendergast and Archibald Mcleod [*sic*]. Mr. Baldassano never authorized Allen to attempt to collect the debts.
> Mr. Baldassano stated that he never asked Allen to perform surveillance outside Steve's Restaurant on June 7, 2004. He also stated that Allen did not give him any information about police activity around Steve's Restaurant on June 7, 2004.

*Id.* at 4-5. The letter concluded by saying: "The above-paragraphs are not intended to cover every aspect of Mr. Baldassano's statement as it pertained to Allen." *Id.* at 5.

Baldassano's statements to the government on March 14, 2006, to the extent disclosed in this letter, are clearly exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The defendant is entitled, not merely to a limited summary that does not "cover every aspect of" Baldassano's statements about Allen, but to the entirety of Baldassano's statements during the debriefing. If the prosecutor or any agent generated notes during the course of this debriefing, Allen is entitled to those notes.[1] *See, e.g., Ferrara v. United States*, 384 F.Supp.2d 384, 402 (D.Mass. 2005) (Wolf, J.) (material in prosecuting attorney's notes discoverable, even if material is not in agent's notes or reports). Even if, implausibly, the government made no written record whatsoever of the debriefing of its key trial witness, Allen is nonetheless entitled to a full description of what Baldassano said during that debriefing. As the First Circuit has explained, the government's

---

[1] It is not material whether the notes would themselves be admissible at trial. *See Ellsworth v. Warden*, 333 F.3d 1 (1st Cir. 2003) (inadmissible evidence that leads to exculpatory evidence is covered by *Brady*). Information about what Baldassano said during the debriefing could be used by defense counsel to question Baldassano at trial and thereby produce admissible evidence.

disclosure obligations under the due process clause are not "dependent on whether that evidence has been reduced to written form." *United States v. Soto-Beniquez*, 356 F.3d 1, 40 (2004). The government should be ordered to disclose the entirety of Baldassano's statements at the March 14, 2004 debriefing (and all other debriefings and proffer sessions) forthwith.

**II.     ALL RELEVANT INVESTIGATION AND INTERVIEW NOTES OF LAW ENFORCEMENT OFFICERS.**

The government asserts that it has provided Allen with all the DEA reports relevant to this case.[2] The government has not, however, provided the defendant with any notes taken by agents during the investigation of the case or during the process of interviewing and debriefing witnesses. Rule 16 authorizes, upon a defendant's request, disclosure of all "books, papers, documents data, photographs, tangible object, buildings or places, ... if the item is within the government's possession, custody, or control and ... the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). The investigation and interview notes of the investigating agents are clearly within the possession of the government and material to preparing the defense in that they may disclose facts not subsequently incorporated into DEA-6 reports or may contradict those reports. To the extent that there are substantial omissions in the DEA-6 reports of information contained in the notes, the jury may regard the investigation as flawed and the investigators as biased against the defendant. To the extent that there are contradictions between the notes and the DEA-6 reports, the notes become fodder for cross-examination. *See United States v. Torres-Galindo*, 206 F.3d 136, 143 (1st Cir. 2000). Courts have explained that Rule 16(a)(1)(E) is not merely a codification of the

---

[2] Allen has filed a Motion to Compel (Docket No. 280) identifying at least one relevant DEA report that the government has not yet provided to the defendant.

government's obligations under *Brady v. Maryland*. Rather, Rule 16(a)(1)(E) authorizes discovery of documents that would enable the defendant "significantly to alter the quantum of proof in his favor." *United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978), *quoted in United States v. Jordan*, 316 F.3d 1215, 1250 (11th Cir. 2003). This includes materials likely to assist in preparation of the case, even if they are inculpatory. *See United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) (noting that "it is just as important to the preparation of a defense to know its potential pitfalls as it is to know its strengths").[3] Accordingly, the government should be ordered to provide all investigation and interview notes related to this case to the defendant forthwith.

### III. ALL WITNESS STATEMENTS CONTAINED IN NOTES OF LAW ENFORCEMENT OFFICERS.

Fed. R. Crim. P. 26.2 and the Jencks Act, 18 U.S.C. §3500, require the government to produce to the defendant any statement by a witness in its possession that relates to the subject matter of that witness's testimony.[4] Rule 26.2 defines a statement as:

> (1) a written statement that the witness makes and signs, or otherwise adopts or approves;
> (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or
> (3) the witness's statement to a grand jury, however taken or

---

[3] Fed. R. Crim. P. 16(a)(2) includes an exception for internal government memoranda. However, this exception specifically **does not apply** to requests made under Rule 16(a)(1), as this request is. *See* Fed. R. Crim. P. 16(a)(2) ("Except as Rule 16(a)(1) provides otherwise ...").

[4] Production of Jencks material is statutorily not required until the conclusion of the witness's direct examination. However, in this case the government agreed to produce all Jencks material prior to trial. *See* Government's Response to Joint Motion for Discovery (Docket No. 203) at 6-7 ("The United States has previously provided most, if not all, Jencks Act materials, and will provide any remaining Jencks Act materials fourteen days prior to trial").

>    recorded, or a transcription of such a statement.

Fed. R. Crim. P. 26.2(f).

Therefore, upon request, the government must turn over to the defendant any notes taken during a witness interview if they contain "statements" either because the witness "adopted or approved" the notes, *see Goldberg v. United States*, 425 U.S. 94, 101-103 (1976) (including statements to government attorneys), or because the notes were a substantially verbatim recital of the witness's oral statement. As the Second Circuit has said:

> Even if not an exact recording, the notes would be considered a substantially verbatim recital of the witness's statement if they "could fairly be deemed to reflect fully and without distortion what had been said to the government agent" and thus be used to impeach the witness's testimony at trial.

*United States v. Scotti*, 47 F.2d 1237, 1249 (2d Cir. 1995), *quoting Palermo v. United States*, 360 U.S. 343, 352 (1959). The government should therefore disclose to the defendant all interview notes containing statements by government witnesses. Any interview notes which the government believes were not adopted or approved and are insufficiently verbatim or contemporaneous to qualify as a "statement" of a witness under Rule 26.2 should be submitted to the Court for *in camera* review to determine whether they include any "statements" under Rule 26.2.

**IV.    ALL NOTES OF GOVERNMENT AGENTS THAT WILL TESTIFY AT TRIAL.**

The government should be ordered to turn over all notes relevant to this case made by any agent who will testify for the government at trial. Even if those notes do not qualify as "statements" of another person under Rule 26.2, they undoubtedly qualify as "statements" of the agent who wrote the notes. A note written by an agent is certainly "a written statement that the witness [the agent]

makes and signs, or otherwise adopts or approves." Fed. R. Crim. P. 26.2(f)(1). It is difficult to imagine a situation where a writing made by an individual could be considered as anything other than a statement by that person.[5] As the Eleventh Circuit has written:

> Consequently, an interviewer's raw notes, and anything prepared from those notes (such as an FBI 302), are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness.... **On the other hand, if the agent is called as a witness, these statements**-depending on the scope of the agent's testimony on direct examination-**may constitute Jencks material.** *See United States v. Saget*, 991 F.2d 702, 710 (11th Cir.1993).

*United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2004) (emphasis added); *see also United States v. Lewis*, 35 F.3d 148, 152 (4th Cir. 1994); *United States v. Johnson*, 521 F.2d 1318, 1320 (9th Cir. 1975). Therefore, as to any agent on the government's witness list, the government should be ordered to disclose all notes made by that agent that are relevant to this case.

## V. DETAILS REGARDING THE GOVERNMENT'S ELEVENTH-HOUR ALLEGATION THAT ALLEN "PRESSURED" AN INDIVIDUAL TO PAY BALDASSANO.

In a March 15, 2006 letter, the government wrote that: "The United States also expects to introduce testimony that your client [Allen] pressured an individual who owed money to Mr. Baldassano to repay the debt." March 15, 2006 letter, *attached hereto as* Exhibit 2. That is the extent of the discovery provided to the defendant regarding this allegation, which has never before been previously mentioned by the government. The defendant has still not been informed when,

---

[5] The fact that an agent's notes may contain summaries of statements by other individuals does not alter this analysis. While the summaries in the agent's notes may not qualify as "statements" of the third party, they undoubtedly qualify as the statements of the **agent** as to what he or she heard and understood.

how, or even whom he allegedly "pressured"!

As Justice White memorably wrote: "The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Williams v. Florida*, 399 U.S. 78, 82 (1970). The government apparently believes that the defendant should learn about crucial evidence against him for the first time during the course of the trial, and that he should have no opportunity to investigate or prepare to confront this evidence prior to trial. While this may be consistent with the goal of obtaining a conviction, it hardly comports with the notion of the trial as a search for truth or with the defendant's constitutional rights to due process and meaningful confrontation of the witnesses against him. The absence of timely disclosure also prevents the defendant from being able to prepare and file an appropriate motion *in limine* to exclude this evidence on the grounds of irrelevance, hearsay, undue prejudice, or under Federal Rule of Evidence 404(b). Therefore, the government should be ordered to provide the defendant with: (a) the name of the witness who will testify as to this allegation; (b) the name of the individual allegedly "pressured" by Allen; (c) the date and location of the alleged offense; and (d) any reports or documents in the possession of the government that detail or support this allegation.[6]

## VI.    INFORMATION REGARDING OTHER PROSECUTION WITNESSES.

The government has listed, on its witness list, *inter alia*, the following individuals: Allen Woodard; Mike Williams; Paul Spanks; and Ryan Caverly. With very minor exceptions, the

---

[6] If pretrial discovery is not ordered, the defendant reserves the right to request a continuance following the introduction of this evidence of "pressuring" for the purpose of investigating the allegation and preparing to cross-examine the witness. This, of course, would needlessly delay the trial.

voluminous discovery provided to the defendant contains **no information** about the potential testimony of these identified witnesses.[7] The defendant simply cannot prepare properly for trial in the absence of any information about potentially important government witnesses, such as who they are and what they are likely to say. If the government possesses any documents relating to any of these individuals, even if they do not constitute "statements" under the provisions of §3500, they should be disclosed under Rule 16(a)(1)(E) as they are material to the defendant's understanding of and preparation of the case.

The government presumably has a pretty good idea about what these individuals will testify to at trial. It is inconceivable that they would be called to the witness stand without having first been interviewed by the prosecution. There is no reason, other than the desire to keep its cards concealed for as long as possible, for the government not to share this information with the defendant. The government should therefore be ordered to disclose: (a) any documents relating to the above-listed witnesses; and (b) in the absence of any such documents, a summary of the substance of the witnesses' anticipated testimony.[8]

---

[7] As an example of the paucity of the information provided by the government, the government wrote, in a letter to the defendant, that "Paul Spanks was Joseph Allen's friend and possible drug customer." The government has not explained whether it believes Spanks was actually a drug customer of Allen, and, if so, when, how, and in what quantities he purchased drugs from Allen. Stating that he was a "possible ... customer" is hardly more informative than saying nothing at all.

[8] If the government is not ordered to provide this discovery, the defendant reserves the right to request a continuance following the completion of the witnesses' direct examination to investigate and prepare to cross-examine them properly, as required by the Due Process Clause and the Sixth Amendment right to confrontation.

Respectfully submitted,
**JOSEPH ALLEN**
By his attorneys,


    /s/ James L. Sultan
James L. Sultan, BBO #488400
Jonathan Harwell, BBO #662764
Rankin & Sultan
151 Merrimac Street
Boston, MA 02114
(617) 720-0011

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 23, 2006.

                                                                             /s/ James L. Sultan
                                                                             James L. Sultan