UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

_____

UNITED STATES

v.

JOSEPH ALLEN

_____

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION *IN LIMINE* TO
EXCLUDE EVIDENCE OF PRIOR BAD ACTS**

## I.    STATEMENT OF RELEVANT FACTS.

The defendant, Joseph Allen ["Allen"], has been charged in a multi-defendant indictment alleging that he conspired with twelve other defendants to distribute OxyContin beginning by at least October 2003 and continuing until June 10, 2004.  Allen is also charged in one substantive count, along with co-defendants Baldassano and Melo, with distributing OxyContin on June 7, 2004.  The government may seek to introduce at trial, *inter alia*, some or all of the evidence detailed below.  Most of the putative evidence is clearly intended to besmirch Allen's character and has nothing to do with this case.  For the reasons articulated herein, it should be excluded.

### A.    Events of January 6, 2004.

According to discovery provided to date, on January 6, 2004, following a drug sale to undercover officers by co-defendants Behsman and Gardner, Gardner drove to a 7-Eleven store in Gloucester.  At that store, he met with Allen, Allen's girlfriend, Alicia Parisi, and Paul Spanks.  Spanks, Parisi, and Allen then traveled to a housing project in Rockport, and then to 18 Allen Street in Gloucester.  Subsequently, Spanks was observed meeting with Randy Gibbs, returning to a

residence, and then, accompanied by Allen, again meeting with Gibbs in a field.

**B.      Sale of Cocaine to Randy Gibbs.**

The government has informed Allen that it intends to introduce evidence under Fed. R. Evid. 404(b) of the sale of cocaine from Allen to Randy Gibbs, in conformity with Gibbs' grand jury testimony.  In that testimony, Gibbs stated that he once met Allen in a field in Gloucester and purchased a $50 bag of cocaine from him.  Gibbs also stated that he purchased a similar quantity of cocaine from Allen on two subsequent occasions.  Based on other discovery, the defense anticipates that the government will allege that one such cocaine sale occurred on January 6, 2004, while Allen was being surveilled.

**C.      Break-in of Residence of Archibald MacLeod.**

The defense anticipates that the government will attempt to introduce evidence that Allen participated in a break-in of the home of co-defendant Archibald MacLeod, in which a number of OxyContin pills and a sum of money were taken.

**D.      Larceny of $6,500.**

The government has indicated that it may seek to introduce evidence that the girlfriend of Ryan Caverly, "Meg," had $6,500 stolen from her by Allen.  During a recorded telephone call with Caverly, who was then incarcerated, "Meg" stated that someone named "Joseph A." bought $6,500 worth of OxyContin pills from her, paid her in cash, and then, when she went to the bathroom, removed the $6,500 from her purse and absconded with both the drugs and the money.  Despite Caverly's questioning, "Meg" was unable to remember the name of this individual, and rejected the suggestion that it was "Joseph Allen."

**E.**    **Sale of OxyContin to Richard Travis Lane.**

The defendant anticipates that the government will introduce evidence from Richard Travis Lane that he purchased OxyContin pills from Allen on five to ten occasions, and that he stopped purchasing pills from Allen because Allen ripped him off by taking his money and then not providing any pills.  When questioned before the grand jury, Lane stated that he did not know the identity of Allen's source.

**F.**    **Jeff King's Addictions.**

The government has indicated that it will introduce evidence that Allen introduced Jeff King to the use of heroin by introducing him to an unnamed heroin supplier, and that Allen advised King that OxyContin would help him with his cocaine addiction and enable him to sleep.

**G.**    **Jeff King's Belief that Allen Stole Money.**

The government has indicated that it will seek to introduce evidence, through Jeff King, that Allen took money from people to buy drugs for them and then kept the money, explaining that he had been ripped off, when that was not true.

**H.**    **Allen's T-Shirt.**

The defendant anticipates that the government may attempt to introduce evidence that on June 7, 2004 and possibly other occasions, Allen wore a T-shirt that read: "Support your Local 81." The government may seek to explain that the inscription refers to the Hell's Angels[1], a motorcycle club that allegedly engages in criminal activity and espouses racist beliefs.

---

[1]    'H' is the 8th letter in the alphabet, 'A' is the 1st letter in the alphabet; hence "81" is a reference to H.A., or Hell's Angels.

## I.      Assault of Sara Ann Thompson.

The defense anticipates that Sara Ann Thompson will be a witness at trial.  The government has informed the defense that on March 23 or 24, 2006, Thompson received a threatening phone call from an unidentified male and was later physically assaulted by an unidentified individual armed with a knife.

## II.      SUMMARY OF APPLICABLE LAW.

"Rule 404(b) provides that evidence of a defendant's prior bad acts may not be admitted to prove his criminal character or propensity to commit similar crimes."  *United States v. Houle*, 237 F.3d 71, 77 (1st Cir. 2001).  As Justice Jackson once explained:

> The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.

*Michelson v. United States*, 355 U.S. 469, 475-476 (1948), *quoted in United States v. Varoudakis*, 233 F.3d 113, 125 (1st Cir. 2000).  The First Circuit has established a two-part test for the admission of evidence of prior bad acts.   First, the evidence "must have 'special relevance' to an issue in the case such as intent or knowledge, and must not include 'bad character or propensity as a necessary link in the inferential chain'."  *Varoudakis*, 233 F.3d at 118, *quoting United States v. Frankhauser*, 80 F.3d 641, 648 (1st Cir.1996).  Second, pursuant to Rule 403, the substantive value of the bad act evidence must not be "substantially outweighed by the danger of unfair prejudice."  *United States v. Tse*, 375 F.3d 148, 155 (1st Cir. 2004).  The admission of Rule 404(b) evidence "is by no means

a routine exercise and should not be accepted unless the government articulates with suitable precision the 'special' ground for doing so." *United States v. Flores Pérez*, 849 F.2d 1, 8 (1st Cir.1988).

Further, the government must introduce sufficient evidence to support a finding that the alleged event actually occurred. The Supreme Court has explained that "the Government may [not] parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Rather, such evidence is admissible "only if the jury can reasonably conclude that the act occurred **and that the defendant was the actor.**" *Id.* at 689 (*emphasis added*). Otherwise, it is simply irrelevant. *See also United States v. Decicco*, 370 F.3d 206, 212 (1st Cir. 2004) (there must be sufficient evidence for jury to conclude by a preponderance that the event occurred and the defendant was responsible); *United States v. Balthazard*, 360 F.3d 309, 313 (1st Cir. 2004).

## III. APPLICATION OF LAW TO FACTS.

### A. Events of January 6, 2004.

There is no reason to believe that Allen's activities on January 6, 2004 had anything to do with the charged conspiracy. Accordingly, evidence of Allen's trip to the 7-Eleven, then to Rockport, and finally to a field near 18 Allen Street is simply not relevant to this case. The government is not entitled to introduce a detailed recitation of the defendant's movements in the hope that the jury will somehow regard those movements as suspicious. To the extent that the government wants the jury to infer that Allen's meanderings were connected to the subsequent

alleged sale of cocaine to Gibbs, there is simply no evidence to support that speculative leap. Further, as argued below, the evidence of a sale of cocaine in this OxyContin case is itself impermissible bad acts evidence under Rule 404.    **B.      Sale of Cocaine to Randy Gibbs.**

Evidence that Allen sold cocaine to Gibbs on one or more occasions is not relevant to the charges in this case, other than to show that Allen is a bad person who sells drugs.  Allen has been charged with participating in an OxyContin conspiracy, not a cocaine conspiracy.  Gibbs does not allege that Allen ever sold him OxyContin or even offered him OxyContin.  There is no evidence that the cocaine allegedly sold by Allen came from any of his alleged co-conspirators, nor that they knew he was selling cocaine.  The government should not be allowed to use this evidence to paint Allen as a drug dealer, where the bad act is entirely unrelated to the charges at issue.  *See United States v. Karas*, 950 F.2d 31, 37 (1st Cir. 1991) (rejecting 404(b) evidence that "requires the inference, and rests on the premise, that defendant's trafficking in cocaine makes it more likely than not that he participated in an unrelated marijuana conspiracy").  It is the government's burden to establish any special purpose, such as proof of motive, intent, or plan, before such evidence can be admitted.  It cannot do so here.

Further, even if the government could articulate a permissible purpose for offering this evidence, its unfairly prejudicial impact would substantially outweigh any probative value, rendering the evidence inadmissible under Rule 403.  Any jury, however instructed, would be sorely tempted to treat this as propensity evidence suggesting that Allen was a drug dealer and therefore likely to have participated in the charged drug conspiracy.  That unavoidable inference is simply not allowed. Therefore, the government should be precluded from offering any evidence regarding alleged cocaine sales by Allen to Randy Gibbs.

### C.    Break-in of Residence of Archibald MacLeod.

Evidence suggesting that Allen participated in a break-in of Archibald MacLeod's house is simply not relevant to the charges against Allen in this case, beyond the impermissible inference that Allen is a lawless individual and therefore more likely to be guilty of the charged crime. To justify the admission of such evidence, the government would first have to present sufficient evidence for the jury to conclude by a preponderance that the break-in occurred and that Allen was responsible. *See Huddleston*, 485 U.S. at 689. Even if it could do so, however, the evidence would remain classic propensity evidence, absolutely barred by Rule 404. There is no suggestion that members of the charged conspiracy engaged in such break-ins in furtherance of their criminal agreement. The defendant has not been charged with any property crime or conspiracy to commit a property crime. The government cannot show any "special" relevance of the break-in to the charges in this case. A break-in of an alleged co-conspirator's home does not serve to establish any motive, intent, or plan relevant to the charges against Allen. Indeed, evidence of Allen's involvement in such a break-in would more likely support an inference that Allen was **not** a co-conspirator with MacLeod. Therefore, the government should be precluded from introducing any such evidence, as it would be regarded by the jury only as proof of the defendant's bad character, which is not at issue in the case.

### D.    Larceny of $6,500.

The allegation that Allen stole $6,500 from "Meg" is both unfounded and entirely unrelated to this case. Evidence that someone named "Joseph A." stole from "Meg" is insufficiently relevant for admission, as there is not sufficient evidence for the jury to conclude by a preponderance of the evidence that Allen was responsible. *See Balthazard*, 360 F.3d at 313. It is, in the Supreme Court's words, "unsubstantiated innuendo." The jury could conclude that Allen stole from Meg only by

sheer speculation.  Further, as "Meg" is not on the government's witness list, any such evidence would presumably have to be offered through Caverly, and would therefore be inadmissible hearsay. Finally, even if the government could directly tie Allen to the alleged larceny -- which it cannot -- the incident would nonetheless be inadmissible in this case as propensity evidence.  The only purpose for which it would be offered would be to show that Allen is a bad man who should be punished.  The government should therefore be precluded from introducing any evidence related to this alleged larceny.

### E.    Sale of OxyContin to Richard Travis Lane.

Based upon his grand jury testimony, Lane's anticipated testimony would be that, on several occasions, Allen sold him a few OxyContin pills.  Yet there is simply no evidence that Allen's alleged sales to Lane were in any way connected to the charged conspiracy.  In the absence of proof of such connection, Lane's testimony could only tend to establish that Allen committed crimes that were not part of the conspiracy.  In light of the similarity between Lane's allegations and the allegations in the indictment, this is the worst kind of propensity evidence.  The jury surely would consider testimony that Allen sold OxyContin to Lane as proof that he was the kind of person who would join in a large-scale conspiracy to distribute OxyContin.  This is an impermissible inference.

Lane's allegation that Allen ripped him off is equally unconnected to the conspiracy. Moreover, it is evidence that serves only to paint the defendant in an unflattering light, showing him to be a bad man capable of criminal acts.  Evidence that Allen ripped off Lane is not relevant to any permissible issue under Rule 404(b).  It is pure propensity evidence and should be excluded.

### F.    Jeff King's Addictions.

The allegation, even if true, that Allen introduced King to heroin and/or OxyContin by

encouraging him to use them is entirely unconnected to this case.  It paints Allen in a negative light, and suggests a connection to the sale of heroin.  In the absence of any special relevance to an issue such as motive or identity, the sole use of this evidence is to make Allen look like a bad man. Evidence of this sort has no place in a fair criminal trial.

### G.    Jeff King's Belief that Allen Stole Money.

The allegation that Allen defrauded people of money by promising to buy OxyContin for them, failing to perform, and then lying to cover his tracks, is entirely unrelated to this case.  There is no allegation that such fraud was part of the drug conspiracy charged in the indictment.  In short, this evidence is relevant only to show Allen's bad character, and is thus impermissible under Rule 404.

### H.    Allen's T-Shirt.

Evidence that Allen owns or wears a T-shirt indicating support for the Hell's Angels motorcycle club is entirely irrelevant to any issue in this case, and serves merely to taint Allen by association with the views and practices of the Hell's Angels.[2]  Guilt by association is not a tenable or constitutionally-permissible theory of criminal culpability.  Even without explanation by the government, members of the jury will have certainly heard of the Hell's Angels and will likely regard support for the Hell's Angels as an indication that Allen is a lawless and violent individual. Allen's alleged support for the Hell's Angels is probative only of his own beliefs, and utterly irrelevant to whether he committed the specific criminal offenses charged in the indictment.  It would be impermissible for the jury to consider either Allen's beliefs or his alleged association with

---

[2]    Ownership of a "Support your local 81" t-shirt is certainly not proof that Allen is a member of the Hell's Angels.  Such t-shirts are readily available to the public at clothing stores throughout the Boston area and via the Internet.

the Hell's Angels as showing a propensity to commit crime, yet that would surely be the result if the government were allowed to introduce this evidence. Therefore, any evidence regarding Allen's choice of attire should be excluded at trial.

### I.    Assault of Sara Ann Thompson.

The jury would understandably be angered to learn that Thompson, a likely witness against the defendant, was threatened and assaulted prior to her testimony. However, there is simply no evidence that Allen was involved in this attack.[3] He obviously could not have personally attacked her, as he is detained pending trial. Nor is there any evidence whatsoever that he directed another person to commit such an attack. The fact that Thompson was attacked shortly before trial does not provide the jury with sufficient evidence to conclude that Allen was responsible. Therefore, evidence regarding the attack is not relevant and is inadmissible. Any arguable relevance is substantially outweighed by the danger of unfair prejudice, rendering the evidence inadmissible under Fed. R. Evid. 403.

### CONCLUSION.

For the foregoing reasons, the government should be precluded from offering the evidence specified above. The government should be held to its standard of proof beyond a reasonable doubt based on relevant and probative evidence, and should not be allowed to distract and inflame the jury by introducing inadmissible propensity evidence or otherwise besmirching the defendant's character. Any conviction based upon general defects in the defendant's character and not on specific proof of

---

[3]    Upon information and belief, Thompson has provided information to law enforcement officials about criminal activities of a number of individuals other that Allen.

the charged offenses would be antithetical to our system of justice.

Respectfully submitted,
**JOSEPH ALLEN**
By his attorneys,


_____/s/ James L. Sultan_____
James L. Sultan, BBO #488400
Jonathan Harwell, BBO #662764
Rankin & Sultan
151 Merrimac Street
Boston, MA 02114
(617) 720-0011

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 28, 2006.

_____/s/ James L. Sultan_____
James L. Sultan