```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS

                                )
UNITED STATES OF AMERICA        )
                                )
          v.                    )    CRIMINAL NO. 04-10288-RWZ
                                )
JOSEPH ALLEN,                   )
          Defendant             )
                                )
```

<u>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR BAD ACTS</u>

Now comes the United States, by its attorneys, Michael J. Sullivan, United States Attorney, and David G. Tobin, Assistant U.S. Attorney, and hereby respectfully requests that this Honorable Court deny the defendant's Motion In Limine To Exclude Evidence Of Prior Bad Acts.

**I.   Standard for Admission Under Federal Rule of Evidence 404(b)**

Evidence of a defendant's prior bad acts may not be admitted to prove his criminal character or propensity to commit crimes of the sort for which he is on trial. *United States v. Varoudakis*, 233 F.3d 113, 188 (1st Cir. 2000). Federal Rule of Evidence 404(b) provides in relevant part: "Evidence of other crimes, wrongs, or acts is ... admissible ... as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident ..."

To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in the case such as intent

or knowledge, and must not include bad character or propensity as a necessary link in the inferential chain. *See United States v. Varoudakis*, 233 F.3d at 118; and *United States v. Frankhauser*, 80 F.3d 641, 648 (1st. Cir. 1996). Second, under Federal Rule of Evidence 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *United States v. Varoudakis*, 233 F.3d at 118. Under Rule 403's weighing test, "it is only unfair prejudice which must be avoided." *United states v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st Cir. 1989). The Court of Appeals stressed "unfair" because by design, all evidence is meant to be prejudicial. *Id.* "Unfair prejudice" invites the jury to render a verdict on an improper emotional basis.

The Court of Appeals for the First Circuit has focused on two factors to determine the probative value of prior bad act evidence: "the remoteness in time of the other act and the degree of resemblance to the crime charged." *United States v. Frankhauser*, 80 F.3d at 648, *quoting United States v. Fields*, 871 F.2d 188, 197 (1st Cir. 1989).

**II.  Evidence**

    **A.  Events of January 6, 2004**
    **B.  Sale of Cocaine to Randy Gibbs**

On January 6, 2004, co-defendants Behsman and Gardner sold one hundred OxyContin pills to an undercover officer for

$5,300.00. After the sale, Behsman and Gardner drove to a convenience store parking lot where they met the defendant (Joseph Allen), Alicia Parissi, and Paul Spanks. After a brief meeting, Behsman and Gardner left the store parking lot together, and the defendant, Parissi, and Spanks drove away together. Later that night surveillance officers observed the defendant and Spanks meet with Randy Gibbs near Burnham Field in Gloucester. During the meeting, the defendant and Gibbs were observed by surveillance to engage in what appeared to be a hand to hand transfer of drugs.

   The defendant asks the Court to exclude the evidence of the defendant meeting with Behsman and Gardner at the convenience store, as well as the evidence of the hand to hand distribution between the defendant and Gibbs. The Court should deny the defendant's request and admit the evidence. The defendant is charged with conspiracy to distribute OxyContin. Behsman and Gardner are named coconspirators. Evidence of the defendant meeting with Behsman and Gardner is relevant and admissible because it shows their association and relationship. An individual is more likely to engage in joint criminal activity with people he knows. Moreover, there is no risk of unfair prejudice as evidence of a meeting between the defendant and Behsman and Gardner will not result in the jury rendering a verdict on the basis of an improper emotional basis.

Evidence of the hand to hand drug distribution between the defendant and Gibbs should also be admitted into evidence. Gibbs is expected to testify that on a number of occasions he purchased cocaine from the defendant. Evidence of the defendant distributing drugs other than OxyContin is permissible pursuant to Federal Rule of Evidence 404(b) to demonstrate motive, intent, plan, knowledge, identity, and absence of mistake or accident.

The First Circuit has upheld the admission of "evidence of other crimes, wrongs, or acts" of defendants under Rule 404(b) to show knowledge and/or intent. In *United States v. Scelzo*, the Court held that evidence of the defendant's involvement in a prior credit card scheme was specially probative of his knowledge and intent regarding his current conviction of credit card fraud. 810 F.2d 2, 4 (1st Cir. 1987). The Court noted that "[c]onspiracy . . . is an offense in which knowing participation and intent is an issue of crucial import," and that "[w]e have thus held that evidence of similar past crimes or wrongful acts may be especially appropriate in conspiracy prosecutions." Id. at 4 (citing *United States v. Crocker*, 788 F.2d 802, 804 (1st Cir. 1986). *See United States v. Wood*, 924 F.2d 399, 401 (1st Cir. 1991) ("Evidence showing a pattern of involvement in previous drug distribution activity was admissible under Federal Rule of Evidence 404(b) as evidence of his knowing participation in the charged scheme."); *United States v. Gonzalez-Sanchez*, 825

F.2d 572, 581 (1st Cir. 1987) (defendant's prior involvement with same people in past arson and fraud schemes is especially probative of whether he was knowing participant in present conspiracy to commit offense or fraud).

In *United States v. Molinares Charris*, the Court held that the district court did not abuse its discretion by admitting evidence of the defendants' prior involvement in smuggling controlled substances in a marijuana case. 822 F.2d 1213, 1220-21 (1st Cir. 1987). Although the prior smuggling operation occurred several years before the marijuana case, the Court found that the evidence was probative of the defendants' state of mind since it tended to disprove their claim of "mere" presence. *Id.* at 1220. Since the district court gave the jury clear limiting instructions regarding the permissible use of the 404(b) evidence, the probative value of the evidence was not "substantially outweighed by the danger of unfair prejudice." Federal rule of Evidence 403; *Id.* at 1220-21. *See United States v. Manning*, 79 F.3d 212, 217 (1st Cir. 1996) (introduction of prior drug dealing in cocaine case not abuse of district court's discretion due to its limiting instructions and broad discretionary power to balance probative value against prejudicial effects); *United States v. Rivera-Medina*, 845 F.2d 12, 16 (1st Cir. 1988) (introduction of prior extortion offenses admissible due in part to carefully worded limiting instruction

given at time of admission of evidence and at end of trial).

Introduction of evidence of prior narcotics involvement has been upheld in order to prove knowledge and intent in drug cases. *See United States v. Hadfield*, 918 F.2d 987, 994 (1st Cir. 1990) (evidence of prior convictions for narcotics violations was admissible to prove knowledge and intent in marijuana and firearm case); *United States v. Ferrer-Cruz*, 899 F.2d 135, 138 (1st Cir. 1990) (admission of prior convictions of cocaine and marijuana trafficking upheld as proof of defendant's knowledge that bags found in car contained cocaine); *United States v. Rubio-Estrada*, 857 F.2d 845, 847-49 (1st Cir. 1988) (introduction of prior cocaine conviction admissible to prove knowledge where defendant argued he did not know that cocaine was in his house); *United States v. Andiarena*, 823 F.2d 673, 677-78 (1st Cir. 1987) (introduction of prior cocaine conviction admissible to prove the identity of the defendant as the source of cocaine).

Gibbs's testimony that he bought cocaine from Joseph Allen is probative of Allen's knowledge and intent to engage in the OxyContin conspiracy with which he is charged. The First Circuit cases aforementioned indicate that evidence of prior drug trafficking offenses is admissible to prove knowledge and/or intent in drug cases. Although some of these cases involved the same drug in both the prior transactions and the cases-at-bar, evidence of prior marijuana and cocaine convictions in *Ferrer-*

6

*Cruz* were held admissible to prove the defendant's knowledge in a cocaine case.

The Fourth and Fifth Circuits have similarly held. In a cocaine distribution case, the Fourth Circuit affirmed the district court's admission of the defendant's prior marijuana and hashish transactions as "similar act evidence." *United States v. Brugman*, 655 F.2d 540, 544-45 (1st Cir. 1981). In *United States v. Bloom*, the Court upheld the admission into evidence of the defendant's prior cocaine and marijuana dealings, stating that the defendant's "willingness to deal in a variety of controlled substances and his avowed experience in such transactions had a direct bearing on his mens rea with respect to distributing heroin . . . ." 538 F.2d 704, 709 (1st Cir. 1976).

Allen and Gibbs dealt cocaine during the time of the charged OxyContin conspiracy. The similarity and proximity between Allen's cocaine dealings with Gibbs to those charged against Allen in the OxyContin conspiracy provide further reason for their admission into evidence. *See Rivera-Medina*, 845 F.2d at 16 (similarity between defendant's prior offenses of conspiracy to extort and present conviction for extortion as well as temporal proximity of all three schemes made easy case for admission of evidence); *Bloom*, 538 F.2d at 709 (evidence of prior heroin and other drug transactions "similar in nature and approximate in time to those involved in the indictment" admissible).

**C.   Break-in of Residence of Archibald Macleod**

At this time, the government does not intend to introduce evidence of the defendant's break-in of Archibald Macleod's house.

**D.   Larceny of $6,500**

At this time, the government does not intend to introduce evidence of the defendant's larceny of $6,500.

**E.   Sale of OxyContin to Richard Travis's Lane**

Richard Travis Lane is expected to testify that he purchased OxyContin from the defendant on five to ten occasions. The defendant asks this Court to exclude this testimony and argues that there is no evidence that the sales to Lane were in any way connected to the conspiracy. Evidence of the defendant distributing OxyContin is not Rule 404(b) evidence; as it is evidence of the charged conspiracy itself. The defendant is charged with conspiring to distribute OxyContin with the twelve others named in the conspiracy charge, and others unknown to the grand jury. Evidence of actual distributions of OxyContin by the defendant is relevant to prove the existence of the conspiracy. Co-defendant Joseph Baldassano is expected to testify that on numerous occasions the defendant obtained OxyContin from him to sell to the defendant's customers.[1]

---

[1] The United States has notified counsel for the defendant that several other witnesses are expected to testify that they purchased OxyContin from the defendant.

**F.    Jeff King's Addiction**

Jeff King is expected to testify that the defendant suggested to King that he try OxyContin in order to sleep better and that the defendant provided King with OxyContin on that occasion and on numerous occasions thereafter. As discussed above, instances of OxyContin distribution by the defendant are admissible to prove the existence of the OxyContin distribution conspiracy. Evidence of the discussion between the defendant and King pertaining to OxyContin is admissible to explain the distribution and as an admission of a defendant (party-opponent) pursuant to Federal Rule of Evidence 801(d)(2).

**G.    Jeff King's Belief that Allen Stole Money**

The defendant seeks to exclude King's "belief" that Allen stole money from people to whom he had promised to obtain OxyContin. The United States will not attempt to introduce evidence of King's belief with regard to the defendant's larceny from his drug customers. The United States reserves the right to introduce competent, admissible evidence pertaining to the defendant's OxyContin distribution practices, including his practice of lying and stealing from his customers. Such evidence is admissible as it explains the criminal activity with which the defendant is charged.

**H. Allen's T-Shirt**

The defendant requests that this Court prohibit any evidence

9

that the defendant wore a t-shirt supporting the "Hell's Angels." The defendant wore a t-shirt that proclaimed "Support your local 81." This is a reference to the "Hell's Angels." Co-defendant Carlos Espinola, who supplied co-defendant Joseph Baldassano with the OxyContin Baldassano distributed to the defendant, belonged to the "Red Devils," a motorcycle club associated with the "Hells Angels." As such, the "Hells Angels" are related to this case. The defendant's choice of attire, which evidences support for the "Hells Angels," is relevant to show is connection with Espinola, another member of the OxyContin conspiracy.

**I.   Assault of Sara Ann Thompson**

The government contends that Sara Ann Thompson should be permitted to testify that on the evening of March 23, 2006, she was attacked and slashed with a blade after opening her front door. During the attack, Ms. Thompson sustained injuries to her forearms, which she used to protect her face. Prior to the attack, Ms. Thompson received a telephone call from an unidentified male who instructed her to watch her children.

Evidence of the threatening telephone call and attack on Ms. Thompson should be permitted as consciousness of guilt evidence against the defendant. Prior to the attack, the government had provided the defendant with notice that Ms. Thompson would be a government witness and had provided the defense a copy of Ms. Thompson's grand jury testimony. At the grand jury, Ms. Thompson

testified that she had purchased OxyContin from the defendant on numerous occasions. Any suggestion that Carlos Espinola had a motive to attack Ms. Thompson should be dismissed. Ms. Thompson made no incriminating statements against Espinola and had no incriminating information pertaining to Espinola.

The jury should be permitted to examine the above-described evidence and determine what, if any, probative value it possesses. If Ms. Thompson testifies that she knows of no one, but the defendant, who has a motive to attack her, the jury would be permitted to conclude that the defendant had arranged to have Ms. Thompson threatened and attacked in an attempt to keep her from testifying at the defendant's trial. Ms. Thompson's testimony would be subject to vigorous attack on cross-examination. A limiting instruction that the evidence, if believed, could only be accepted as consciousness of guilt evidence would cure any potential unfair prejudice.

Any argument that the defendant could not be responsible for an attack that took place while he was incarcerated should be rejected. As this Court knows, inmates have many methods available to them to relay information to confederates outside prison.

11

**Conclusion**

For the reasons stated above, The United states requests that this Court deny the defendant's motion to exclude evidence.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By: /s/: *David G. Tobin*
   DAVID G. TOBIN
   Assistant U.S. Attorney


CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 11, 2006.

        */s/: David G. Tobin*
        DAVID G. TOBIN