

U.S. Department of Justice

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*          *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts  02210*

May 14, 2006

**Sent via email**
James L. Sultan, Esquire
Rankin & Sultan
151 Merrimac Street, Second Floor
Boston, MA 02114-4717

    Re:    <u>United States v. Carlos Espinola, et al.</u>
                Criminal No. 04-10288-RWZ

Dear Mr. Sultan:

      I am writing in response to your recent discovery motion, which was filed in the late afternoon or evening of Friday, May 12.  The government has previously provided to you the handwritten notes of Special Agents Story and Desmond as well as the handwritten notes of Gloucester Detective Sean Connors concerning interviews of Mr. Baldassano although the government is under no obligation to provide you with inculpatory evidence.  In addition to these notes, the government has provided you with the consensual audio recording from the June 7, 2004 drug deal.  This tape clearly demonstrates that, on June 7, 2004, Mr. Baldassano wanted the confidential informant and the undercover agent to pick up Allen so that he could be present with them when they drove to Peabody to do the deal.  After he entered their car, Baldassano asked them to pick up Allen.  In addition, the government has provided you with pen register information reflecting that Baldassano and Allen had multiple telephone conversations on June 7 prior to Baldassano being picked up and even after Baldassano was picked up by the confidential informant and the undercover agent.  Given the volume of information that the government has previously provided to you, I do not believe that the government is obligated to provide you with any further information.

      In an effort to be responsive to your motion, however, I have reviewed again Special Agent Story's handwritten notes of the proffer session on August 31, 2004 as well as my own handwritten notes starting on March 13, 2006 (I do not believe that I was present for the proffer on August 31, 2004).  In connection with the interview on August 31, 2004, I do not believe that the June 7 drug deal was discussed as there is nothing in Special Agent Story's notes about that

Mr. Sultan
May 14, 2006
Page 2

subject.

My own notes from an interview on March 13, 2006 state that Baldassano discussed the "particulars" of the June 7 drug deal but I did not put down any further details.

My own notes from another interview on April 27, 2006 reflect that Baldassano did not discuss the June 7 drug deal during that interview.

My own notes from another interview on May 2, 2006 reflect that Baldassano did not discuss the June 7 drug deal during that interview.

My own notes from another interview on May 3, 2006 reflect that Baldassano did not discuss the June 7 drug deal during that interview.

There is nothing in the single page of Special Agent Story's notes from May 4, 2006 reflecting that the June 7 drug deal was ever discussed during that interview.

My own notes from another interview on May 5, 2006 reflect that Baldassano stated that defendant Joseph Allen was supposed to go with Baldassano on the June 7 drug deal but that he could not do it due to construction in Gloucester (i.e., the car containing Baldassano was unable to pick up Allen) and that Baldassano had Allen "go with Cream and Matthews instead." My notes also reflect that it was "possible that [Allen] was going to do the hand-to-hand exchange" on that deal.

I have no further handwritten notes after May 5, 2006. I can tell you, however, that Baldassano was present at various times in the U.S. Attorney's Office either meeting with the agents, listening to tapes, reviewing transcripts, or reviewing written summaries of incoming calls to and outgoing calls from his cellular telephone for June 7, 2004 and other days. As this process was ongoing, Mr. Baldassano confirmed that, on June 7, 2004, he wanted the confidential informant and the undercover agent to pick up Allen so that Allen could be physically present in the car with him and at the deal, as is stated on the tape itself. Baldassano disagreed with the suggestion that he wanted Allen to be there for security reasons or for protection in cases things went wrong. Baldassano believes that he wanted Allen there to do the hand-to-hand exchange because he did not like to do the deals or touch the drugs himself. He also stated that he did not ask Allen to perform counter-surveillance in the vicinity of Steve's Restaurant on that date.

```
Mr. Sultan
May 14, 2006
Page 3
```

      I trust that the above information provides you with the information which you seek by way of your motion.

                                        Very truly yours,

                                        MICHAEL J. SULLIVAN
                                        United States Attorney

                 By:    /s/Michael J. Pelgro
                       Michael J. Pelgro
                       Assistant U.S. Attorney