UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CRIMINAL #04-10288-RWZ

_____

UNITED STATES

v.

JOSEPH ALLEN

_____

# MEMORANDUM OF LAW IN
# SUPPORT OF DEFENDANT'S MOTION FOR A JUDGMENT OF
# ACQUITTAL ON COUNT SIXTEEN[1]

**I.    STATEMENT OF RELEVANT FACTS.**

Defendant Joseph Allen ["Allen"] is charged in Count Sixteen with distributing and possessing with intent to distribute oxycodone, and with aiding and abetting distribution and possession with intent to distribute oxycodone, on June 7, 2004. On that day, according to uncontested evidence presented at trial, Joseph Baldassano, John Hickey, and Glen Coletti (acting in an undercover capacity) met in Gloucester and drove to Peabody, where Baldassano and Coletti engaged in a hand-to-hand drug transaction outside the home of Jose Melo.

**A.    Testimony of Joseph Baldassano.**

Baldassano testified at length regarding this episode. He stated that he heard from John

---

[1] Although the government has not yet formally rested, AUSA Tobin has informed undersigned counsel that the government will introduce no additional evidence in its case-in-chief with the exception of a stipulation respecting the chemical composition of the pills purchased by the undercover agents over the course of the government's investigation. Accordingly, this memorandum of law is being filed in anticipation of the government's resting its case. The defendant's formal Rule 29 motion will be filed in Court after the government rests.

Hickey, a well-known drug user in the area, about a possible sale of 100 pills to a "buddy" of Hickey's. Baldassano did not know that Hickey's "buddy" was an undercover DEA agent. Baldassano testified that he agreed to make the sale at Steve's Restaurant in Gloucester in the late afternoon of June 7. Baldassano testified that he told Joseph Allen that there was a deal in progress, and that he was to meet with Hickey and his buddy. Baldassano said that he and Allen had prior plans to hang out that day, and that when Baldassano told Allen that he would be at Steve's, Allen said that he would meet him there.

Baldassano also testified that he asked Allen if he wanted to do the hand-to-hand transaction in return for receiving some pills for free. Baldassano said it was his practice not to engage in hand-to-hand transactions himself, but rather to have someone else do it for him. Baldassano testified that Allen responded: "Sure."

Baldassano testified that he went to Steve's Restaurant on June 7 and ate a steak dinner. While in the restaurant, he spoke to a man whom he concluded was a police officer. He also observed what he thought were two undercover vehicles in the parking lot. According to the recording of the conversation which took place in Coletti's car on that date, Baldassano recognized one of the vehicles as a car previously seized from Nate Collins, a local drug dealer. Baldassano therefore decided not to conduct the deal at Steve's Restaurant. He testified that he then called Allen and told him that the area was "hot," and that Allen should not go there. He testified that he told Allen that there were police officers there.

Baldassano testified that, after leaving Steve's Restaurant, he began walking toward his house at 220 Washington Street, approximately 10 minutes away. He was then picked up by the undercover vehicle being driven by Coletti in which Hickey was riding. Baldassano had called

Hickey and told him where to pick him up. Once in the car, Baldassano told Coletti that they had to drive to Peabody to pick up the pills and that they would do the transaction at the drug supplier's house. He testified that he told them that he wanted to pick up Allen first, and that testimony is corroborated by an excerpt from a recording of the conversation, which was admitted into evidence and played for the jury. *See* Exhibit 56 at 1.

Baldassano testified that he later received a phone call from Allen, who said he was at Steve's Restaurant. Baldassano told Coletti to go to Steve's to pick up Allen. Because of road construction, they were not able to get to Steve's. Baldassano then told Coletti to leave Gloucester and head to Peabody. Baldassano again spoke to Allen, and told him to wait at Baldassano's house on Washington Street, where Jason Matthews and Matthew Cream would pick him up. Baldassano's testimony regarding this conversation is corroborated by the recording. *See* Exhibit 56 at 12. He also told Matthews to pick up Allen and head to Peabody.

Baldassano testified that he, Coletti, and Hickey arrived at Melo's residence and parked. Baldassano went in the back door of the house, got the pills, returned to the car, conducted a hand-to-hand exchange of drugs for money with Coletti, and then entered the house again. Coletti and Hickey then left in Coletti's car. Baldassano waited outside Melo's residence where, 10 minutes later, he was picked up by Matthews, who was driving his green Jeep Cherokee. Cream and Allen were passengers in the Jeep. They then went to the North Shore Mall, where they did some shopping.

On cross-examination, Baldassano was asked whether Allen had any role in the June 7 drug deal. He responded: "Other than pick me up, no."

**B.    Testimony of Government Agents Conducting Surveillance on June 7, 2004.**

The government presented testimony from several government agents that conducted surveillance on June 7, 2004. They testified that Allen arrived at Steve's Restaurant after Baldassano had already departed, and then stood around outside Steve's Restaurant and, later, across the street from Baldassano's residence at 220 Washington Street. While standing outside, Allen was watching traffic pass by. Allen also spoke several times on cell phones during this time, and the jury could infer that he was speaking to Baldassano. At around 4:30 p.m., Allen was picked up by a Jeep Cherokee driven by Matthews. Cream was also in that vehicle. Matthews drove to Peabody, where he picked Baldassano up outside Melo's house, approximately ten minutes after Baldassano had conducted the hand-to-hand sale of 100 OxyContin pills to Coletti. The Jeep, driven by Matthews and now carrying Allen, Cream, and Baldassano, traveled to the North Shore Mall, and later returned to Gloucester.

**II.    SUMMARY OF APPLICABLE LAW.**

**A.    Rule 29 Standard.**

Under Federal Rule of Criminal Procedure 29(a), a court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." *See also Jackson v. Virginia*, 443 U.S. 307, 318 (1979) (proof beyond reasonable doubt required by due process clause). In ruling on a Rule 29 motion, the court must determine:

> whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime.

*United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir. 1994). The First Circuit has explained:

> [J]uries do not have carte blanche. The appellate function, properly understood, requires the reviewing court to take a hard look at the record and to reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.

*United States v. Spinney*, 65 F.3d 231, 234 (1st Cir. 1995); *see United States v. Hernandez*, 146 F.3d 30, 32 (1st Cir. 1998) (noting that sufficiency standard is identical in both trial and appellate courts). While both direct and circumstantial evidence can support a conviction, "it must be borne in mind that the proof must still [be] sufficient for the jury to [find] guilt *beyond a reasonable doubt*." *United States v. Valerio*, 48 F.3d 58, 64 (1st Cir. 1995) (emphasis in original).

### B.   Elements of Distribution Charge.

To convict a defendant of a violation of §841(a)(1), the government must prove (1) that the defendant transferred the controlled substance to another person; (2) that the defendant knew that the substance was a controlled substance; and (3) that the defendant acted intentionally. *See* First Circuit Pattern Jury Instructions §4.23 (1998 ed.).

### C.   Aiding and Abetting.

Under 18 U.S.C. §2, whoever "aids, abets, counsels, commands, induces or procures" the commission of a criminal offense is liable as a principal. In order to prove a defendant liable as an aider and abetter, the government must show (1) that someone committed the substantive offence; and (2) that the defendant "became associated with the endeavor and took part in it, intending to ensure its success." *United States v. Spinney*, 65 F.3d 231, 235 (1st Cir. 1995). The Supreme Court, in a time-honored definition, explained that:

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed."

*Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949), *quoted in United States v. Loder*, 23 F.3d 586, 590 (1st Cir. 1994).

A defendant cannot be guilty of aiding and abetting merely because he or she knows that a crime is being committed; rather, he or she must do **something** to assist that crime. *See, e.g., United States v. Leonard*, 138 F.3d 906, 909 (11th Cir.1998) ("To sustain a conviction for aiding and abetting, the evidence must show that the defendant ... committed an overt act in furtherance of the criminal venture"); *United States v. Lindell*, 881 F.2d 1313, 1323 (5th Cir. 1989) ("To prove participation, the evidence must show that the defendant committed an overt act that assisted in the success of the venture"). In *Leonard*, the court noted that even if a defendant could be inferred to know of the presence of cocaine and a firearm in vehicle, in the absence of any actions on his part to "aid their possession or concealment," he was not guilty of aiding and abetting. It wrote: "While it is unwise, merely sharing a vehicle in which one knows cocaine and a gun are hidden does not amount to possession or aiding or abetting their possession." 138 F.3d at 909. The First Circuit has emphasized that knowledge that others are committing crimes is insufficient alone to support an aiding and abetting conviction: "something more, **some action to assist the crimes**, is needed." *United States v. Montilla-Rivera*, 115 F.3d 1060, 1064 (1st Cir. 1997) (*emphasis supplied*).

**III.   APPLICATION OF LAW TO FACTS.**

Joseph Allen, as the government's key witness conceded, had nothing to do with the drug transaction conducted on June 7, 2004, other than being a passenger in a car which picked up one of the participants ten minutes after the transaction was completed. Based on its requests for jury instructions filed with the Court, the government is apparently proceeding on the theory that Allen aided and abetted the transaction, but that theory is utterly inapplicable to the facts of this case.

Even accepting the testimony of Baldassano as entirely true in this Rule 29 context, the government has not introduced any evidence showing that Allen "participated" in the transaction, as required by binding legal precedent. Allen was not present at the time of the deal. He did not do anything before the deal took place that assisted it in any way; he did not do anything at the time of the deal that assisted it in any way; and he did not do anything after the deal concluded that assisted it in any way. As the First Circuit noted in *Montilla-Rivera*, it is not enough for the government to show that a defendant was aware that others were committing a crime to establish culpability as an aider and abetter. Yet that is all the government has shown here. Allen may have known that Baldassano was going to conduct a drug transaction; he may even have been willing to participate. But there is not a scintilla of evidence that he actually did anything that aided or abetted that transaction. Allen arrived at Steve's Restaurant after Baldassano had left, he passed on no relevant information to Baldassano, and he arrived at Melo's house after the deal had concluded and the drug buyer (Coletti) had left with the drugs. In sum, the government has adduced no evidence -- even accepting the testimony of its witnesses as true -- that Allen participated in the June 7, 2004 drug transaction in any way. No jury could conclude beyond a reasonable doubt that Allen assisted the transaction. Consequently, the defendant's motion for a judgment of acquittal on Count 16 must

be granted.

        Respectfully submitted,
**JOSEPH ALLEN**
By his attorneys,

    /s/ James L. Sultan
James L. Sultan, BBO #488400
Jonathan Harwell, BBO #662764
Rankin & Sultan
151 Merrimac Street
Boston, MA 02114
(617) 720-0011

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 18, 2006.

                                                /s/ James L. Sultan
                                               James L. Sultan